## FISH and others *vs.* DODGE.

A mere contractor, though upon a public work, who is not a public officer, is not liable to third persons, for damages occasioned by the non-performance of the obligations of his contract.

There is a material and plain distinction between obligations or duties imposed by law—as upon public officers—and those created by contract, merely. In regard to the former, they are created for the benefit of, and are due to, every one who has occasion for, or an interest in, their performance; and hence any one who sustains an injury which is peculiar to himself, by means of their non-performance, or their improper performance, may maintain an action against him who owes the duty, to recover the damages thus sustained. But as to the latter, they rest between the contracting parties alone, and none but parties, or privies, can enforce them, or maintain an action to recover damages for a neglect or refusal to perform them.

Accordingly *held*, that one who had entered into a contract with the state, to keep a section of the Erie canal in repair, was not liable to an individual who had sustained damages in consequence of his neglecting to perform that duty.

The principle, *respondeat superior*, does not apply to such a case, and affords no shield to the contractor, who is exercising an independent employment under a contract, and is in no sense a servant or agent of any one.

Neither the contracting board, nor the canal commissioners, can be held to incur any liability for accidents, or injuries to third persons, by reason of the failure of the contractors to perform their contracts.

Nor is the sovereign, or state, liable in such a case; because negligence in the selection of an agent or servant cannot be imputed against the state.

APPEAL from an order made at a special term, overruling a demurrer to the complaint. The plaintiffs, in their complaint, alleged that on or about the 7th day of September, 1859, one Myron H. Mills entered into a contract under seal with the people of the state of New York, which contract was duly executed on the part of said people, under the hands and seals of the then canal commissioners, state engineer and surveyor, and auditor of the state of New York, and said contract was duly made in pursuance and by virtue of the laws of the state of New York relating to the canals of said state, of which contract the following is a copy, viz: "For keeping in repair superintendent section No. 11, Erie canal. Articles of agreement, made and concluded this six-

teenth day of September, in the year eighteen hundred and fifty-nine, between Myron H. Mills, of the city of Rochester, county of Monroe, of the first part, and the people of the state of New York of the second part, whereby it is covenanted and agreed as follows: The said party of the first part does hereby covenant and agree that he will, for the term of three years from the first day of October next, furnish and keep on hand all the materials necessary, which shall be of sound and good quality, and perform all the labor necessary to keep in good repair, and well bottomed out to its original base or bottom line and width of prism, free from obstructions, and in good navigable condition, at all times during the season of navigation, and to break the ice in the canal to the extent that the canal commissioner or engineer in charge may require, to facilitate the passage of boats, toward the close of navigation, all that portion of the Erie canal known and distinguished as superintendent or repair section number eleven, extending from the east line of Monroe county to the west end of construction section number two hundred and eighty-four, in the village of Brockport, including its banks and tow-path, walls, pavements, docking, locks, weigh-locks, aqueducts, dams, bridges, basins, side-cuts, guard-banks, feeders, reservoirs, culverts, waste-weirs, creek channels, ditches, lock and watch-houses, and every other structure or thing, of whatever name or designation, connected therewith; and to construct or reconstruct, as in the opinion of the canal commissioner in charge the same shall become necessary, and on such plan as the said commissioner shall direct, any of the bridges or other structures which may fail or require reconstruction during the period of this contract; but when the same shall be more expensive than it would be if constructed according to the old plan, the party of the first part is to be paid the difference, but which shall only be paid upon the certificate of the division engineer of the western division, that he has examined the location, and made the estimate by which the said difference was

ascertained, and that it is a proper and reasonable charge for such extra cost. In all cases of breaches in the banks, or failure of any of the structures on the said section, the party of the first part agrees to give immediate notice to the commissioner in charge, and the auditor of the canal department, and to employ such force upon its repair or reconstruction as will insure its completion at the earliest possible moment; and all damages that may accrue from entering upon lands to obtain materials for such repairs, or reconstruction, shall be fixed by the appraisal of the canal appraisers, or settled by the commissioner, as now provided by law, and deducted from the first monthly payment after such appraisal, payable to the said party of the first part, as hereinafter provided for, unless the said party of the first part shall previously adjust the said damages by an amicable settlement with the claimants. And it is further mutually agreed between the parties hereto, that in case the actual expense of repairing any breach which may occur upon any part of the canal, side-cuts or feeders, embraced in this contract, or any structure connected therewith, shall exceed the sum of five thousand dollars, such excess shall be paid by the parties of the second part. And the said party of the first part agrees to have the locks, waste-weirs and feeders on the said section well and properly attended, the locks to be attended night and day through the season of navigation, and to have good and sufficient lights at the locks at all times during the night, and to keep or cause to be kept a regular account of the lockages at such locks as the auditor shall designate, to be sworn to by the lock-tender, and to be sent to the auditor, on the first day of every month. And the said party of the first part further agrees to give prompt and sufficient assistance to boats or floats obstructed by bars, or low waters, or 'jams' of boats in the canal, or any navigable feeder embraced in this contract, and to assist the unloading of sunken boats, without charge, in the same manner as the superintendent is required to do under section No. 26 of the canal regulations

of 1858.  *  *  *  It is agreed, further, between the parties in this contract, that the party of the first part may prosecute offenders for violations of the canal laws and regulations, committed upon that portion of the canal or other works embraced in this contract, or upon any structure connected therewith, and recover the same penalties imposed by law or any existing resolution of the canal board, as might have been recovered for like offenses if prosecuted by a canal superintendent; and the amount of such penalties recovered shall be accounted for to the state by deduction from monthly payments to said party of the first part, but said party of the first part may sue in his own name, and recover to his own use the actual damages he may have sustained in consequence of such trespass.  *  *  *  *  *  And it is further agreed, that the work embraced in this contract shall be performed under the immediate direction of the canal commissioner in charge, and at such times and seasons, at such places in the work, and in such manner as the aforesaid commissioner or the engineer in charge shall direct; and particular reference shall at all times be had to the navigation of the Erie canal, the safety, protection and security of the banks and of the mechanical structures in any manner connected with the work herein contracted for; and all precautionary measures that may be deemed necessary for the security and protection of the aforesaid section of the canal, and the navigation of the same, shall be carried into effect by the said party of the first part, and the levels filled up and drawn off, as shall be directed by the commissioner or engineer aforesaid.  *  *  *  *  And the said party of the first part hereby further promises and agrees to perform the several stipulations of this contract by himself and workmen under his immediate superintendence, and not by a sub-contract or sub-contractor.  And it is further agreed, that if at any time any overseer or workman employed by said party of the first part shall be declared to be unfaithful or incompetent by the canal commissioner or resident engineer having charge of said work on that part of the canal

Fish *v.* Dodge.

embraced in this contract, the party of the first part, on notice of such declaration, shall forthwith dismiss such person, and shall no longer employ him on any part of the work. And it is further mutually understood and agreed, that this contract, or any interest in the same, shall not be assignable to any person or persons whomsoever, without the written consent or approval of the canal commissioners; and in case of assignment with such approval, the same shall not be effectual for any purpose whatever, without the written consent to such assignment of the sureties furnished for the performance of the contract, or such assignee furnishing such new and satisfactory security as may be required in conformity with the provisions of chap. 329 of the laws of 1854, and the provisions of the act entitled 'An act to secure the payment of wages to laborers employed on the canals and other public works of this state,' passed April 10, 1850. And it is hereby further understood and agreed between the parties to this contract, that in case of delays arising in the progress of the work, either from neglect or inability on the part of the party of the first part, which may retard the opening of the Erie canal, or in any way embarrass or interfere with its navigation, said canal commissioner may direct the said resident engineer to employ a sufficient force, and purchase the necessary materials to prosecute the work, or such portion of it as in the opinion of the said commissioner may be necessary to secure navigation, and keep the said section in proper repair; and all expenses incurred in the peformance of such work shall be paid for by the said canal commissioner, and the amount shall be charged to the account of the aforesaid party of the first part, and deducted from the payments hereby agreed to be paid to said party of the first part. And it is further agreed, that the said party of the first part shall receive into and pass through that portion of the canal, or feeders, included in this contract, at all times, all and so much water as may be necessary or required for the use or navigation of any part or parts of the canal de-

pendent upon or connected with the said portion thereof included in this contract, and in such manner as shall be directed by the canal commissioner or engineer in charge. In case the state, division or resident engineer shall certify to the said canal commissioner, or to the contracting board, that the repairs upon that portion of the canals embraced in this contract are not promptly and properly made, or that unsuitable materials are used, or that the locks are not well and properly attended, or the navigation is not kept free from jams from boats, timber or other obstructions, or the feeders to said canal are neglected, so that there is not sufficient water for navigation; for all or either of the above causes of neglect by said party of the first part, the canal commissioner may withhold said monthly drafts from the party of the first part, and the contracting board may declare the said contract abandoned, and thereupon the canal commissioner shall take charge of the work embraced in this contract, and make the repairs necessary to maintain navigation, in the manner provided for by chap. 105, laws of 1857, in cases where said repairs are not performed by contract, until the contracting board shall re-let said repairs. In consideration of the faithful performance of this contract by the said party of the first part, the party of the second part agrees to pay therefor, out of any money in the treasury applicable to canal repairs, by a draft on the auditor of the canal department, the sum of eight thousand two hundred and eighty dollars, ($8280,) payable in equal monthly payments, commencing with the first day of November, 1859, deducting therefrom fifteen per cent, to be held to the end of each year, as security for the faithful performance of this contract, which fifteen per cent for the previous year shall be paid at the expiration of the third month of each succeeding year thereafter, in case the provisions of such contract have been fully complied with."

The plaintiffs alleged that after the execution and delivery of said contract, the said canal commissioners, as they were authorized to do by the laws of the state of New York afore-

Fish *v.* Dodge.

said, made, executed and delivered to said Myron H. Mills a writing under their hands as such commisssioners, dated September 23, 1859, whereby they, as such commissioners, authorized the said Myron H. Mills to sell and assign said contract to the defendant; and the said Myron H. Mills did on the same day, by an instrument under his hand and seal, sell, assign and set over to said defendant the said contract, and all of his right and title in and to the same, and all benefit to be derived therefrom, and subject to all the conditions and requirements contained in said contract, and which might arise and accrue by reason thereof. And that the said defendant on his part, in consideration of said assignment, on or about the 26th day of September, 1859, executed and delivered to the people of the state of New York a bond, dated that day, in the penal sum of $6000, with two sureties, conditioned that if the said assignment of said contract should be accepted and approved by the canal commissioners, he, the said defendant, would, in pursuance of said contract, at the time therein mentioned, enter upon the execution thereof, and fully and faithfully perform the same according to the stipulations contained therein. That said bond was afterwards duly approved by the canal commissioners, and the assignment was also accepted and approved by them. That said canal commissioners were authorized to permit said assignment, and were authorized and required to take and approve the bond aforesaid by the laws of the state of New York. That the defendant thereupon succeeded to and became vested with all the rights and subject to all the liabilities of said Myron H. Mills under the contract aforesaid. And that at the time for that purpose mentioned in said contract, the defendant duly entered upon and undertook the execution thereof, and has ever since continued to undertake the execution of said contract, and said contract still remains in full force and effect. The plaintiffs then alleged that the defendant had failed to perform said contract, by neglecting to keep the tow-path of the Erie canal, in and through that

part of section eleven thereof, mentioned in said contract, in repair, and by negligently and wrongfully, in violation of said contract, suffering and permitting the tow-path of the section aforesaid to become and remain uneven and greatly out of repair during the season of canal navigation of the year 1860, and by suffering to be made and continue during the time aforesaid, in the tow-path aforesaid, large and deep holes, contrary to the condition of said contract. That the said Erie canal is a public highway for the transportation of property and persons by water, and the same is the property of the people of the state of New York. And the tow-path is a part of said canal, constructed and used for the passage of horses and other animals which are necessarily employed in towing canal boats or other craft upon and along the said canal, and upon and along section eleven aforesaid; and it became and was the duty of the defendant, under the contract aforesaid, to make and keep the tow-path of said canal, through the said section eleven, in such repair that horses and other animals lawfully engaged in towing canal boats or other craft, or for any purpose lawfully passing along said tow-path, might pass upon, over and along the same, conveniently and safely. That on or about the 17th day of October, 1860, and during the navigation season of that year, two horses, the property of the plaintiffs, were lawfully passing upon, over and along the tow-path of section number eleven of the Erie canal, mentioned in said contract, in the night time, and were lawfully employed by the plaintiffs to tow, and were then towing through the section aforesaid, a canal boat of the plaintiffs, their property, and lawfully passing through said canal, and while said horses were carefully, properly and lawfully passing over and upon the tow-path of the section aforesaid, employed at the work of towing along said canal in the section aforesaid, the said horses, in consequence of and for the sole reason that the tow-path of said canal in said section eleven, mentioned in said contract, was then in the bad condition and out of repair, as hereinbefore stated, and was then unsafe

Fish *v.* Dodge.

and unfit for the passage of horses employed as aforesaid, fell or were precipitated into the canal in said section eleven, and one of said horses was drowned and wholly lost to the plaintiffs, and the other of said horses, and the harness upon said horses used in the business of towing said boat, were greatly injured. That said horse so drowned and lost was of the value of $100, and the damage done to the other of said horses, and to said harness, was the further sum of $25. That the loss of said horse and the damages to the other, and the harness aforesaid, was wholly occasioned by the neglect of the defendant to make and maintain said tow-path of said section of the canal in that repair and condition in which he was required to keep the same, in and by the terms of said contract, and that said loss and damage was not in any respect occasioned by want of care and diligence on the part of the plaintiffs or their servants. That said tow-path was out of repair, as hereinbefore set forth, for a long time prior to the time said horses fell into the canal as above stated, and that the defendant well knew the same.

Wherefore the plaintiffs demanded judgment against the defendant for one hundred and twenty-five dollars and interest, besides costs.

The defendant demurred to the complaint, on the ground that it did not state facts sufficient to constitute a cause of action. The court overruled the demurrer, with leave to the defendant to answer on payment of costs. The defendant thereupon appealed.

*Samuel J. Crooks*, for the appellant.

*Edward Harris*, for the respondents.

*By the Court*, JOHNSON, J. The principle, *respondeat superior*, does not apply to a case like this, and affords no shield to the defendant. This is fully settled in the cases of *Blake v. Ferris*, (1 *Seld.* 48;) *Pack v. The Mayor &c. of*

*New York*, (4 *id.* 222 ;) and *Kelly* v. *Same*, (1 *Kern.* 432.) He is in no sense an agent or servant of any one, but is exercising an independent employment under an express and specific contract. This contract the statute authorizes the contracting board to make; which board is composed of the canal commissioners, the auditor of the canal department, and the state surveyor and engineer. It is part of the system adopted by the state for maintaining the public works, and keeping its property in repair. Formerly this was done through the machinery or agency of superintendents of repairs, who were public officers, charged by statute with the duty of doing, or causing to be done, under the general supervision of the canal commissioners, just what the defendant has undertaken to do by his contract.

Neither the contracting board, nor the canal commissioners, can be held to incur any liability for accidents or injuries to third persons, by reason of the failure of these contractors to perform their contracts. The servants of the sovereign thus contracting in their official capacity were never, in any way, liable upon such contracts, made within the scope of their authority, or for the wrongful acts or omissions of the persons with whom they contracted. The principle of *respondeat superior* never applied in such a case. (*Broom's Legal Maxims,* 390, *and cases there cited.*) Nor is the sovereign, or state, liable in such a case; because negligence in the selection of an agent or servant cannot be imputed against the state.

The question then arises, whether the defendant can be held liable for the alleged injury, occasioned by his neglect or refusal to make the repairs, and to keep the tow-path of the canal in repair, according to his contract. He is not a public officer, but a mere individual contractor, whose obligations and duties all spring from the provisions of his contract, instead of the requirements of the statute or the common law.

There is no doubt that a superintendent of repairs, charged with the same duty, and under the same obligation by virtue

Fish *v.* Dodge.

of his office, would be held liable in a case like this. (*Shepherd* v. *Lincoln*, 17 *Wend.* 250. *Adsit* v. *Brady*, 4 *Hill*, 630.) But this is upon the ground of the legal duty he owed to the public, as a public officer. There is of course no privity of contract between the plaintiffs and the defendant, on which the liability of the latter to the former can be made to rest. And unless the defendant under his contract can be held to owe a legal duty to the public, to perform it, I do not see any ground upon which this action can be maintained.

I think no case can be found, nor am I aware of any principle of law, which makes a mere contractor, though upon a public work, who is not a public officer, liable to third persons for damages occasioned by the non-performance of the obligations of his contract. There is a material and plain distinction between obligations or duties imposed by law, as upon public officers, and those created by contract merely. In regard to the former, they are created for the benefit of, and are due to, every one who has occasion for, or an interest in, their performance; and hence any one who sustains an injury which is personal to himself, and not common to all others, by means of their non-performance, or their improper performance, may maintain an action against him who owes the duty, to recover the damages thus sustained. But as to the latter, they rest between the contracting parties alone, and none but parties or privies can enforce them, or maintain an action to recover damages for a neglect or refusal to perform them. It is urged on behalf of the plaintiffs that this contract being one in regard to a public work, which is for certain purposes a public highway, and for keeping it, as such highway, in repair, is in the nature of a public obligation or duty, owing to every one lawfully using such highway; and that unless they can maintain this action they are remediless, as they have no right of action against the canal commissioners, or the contracting board, or the state. It may be that the plaintiffs are without remedy, if

---

Fish v. Dodge.

---

this action fails; but that consequence would furnish us with no authority to change a well established rule of law.

The character of the work contracted to be done, can never be held to change the character of the obligation of the contracting party. It is still private and personal, and not in any legal sense public and official. I think no one would contend that the defendant could be indicted for neglecting to keep the canal, or the towing path, in repair, according to his contract.

The precise question here presented was decided in the case of *Minard* v. *Mead,* not reported,(a) in accordance with the foregoing views, by our brethren in the eighth district. A very able and conclusive opinion by GROVER, J., which was concurred in by all the judges, has been furnished us by the learned justice who delivered it. The conclusions arrived at in that case we fully approve and adopt.

It follows, therefore, that the demurrer was well taken, and was erroneously overruled at the special term.

The defendant must have judgment on the demurrer.

[MONROE GENERAL TERM, September 1, 1862. *Johnson, Welles* and *J. C. Smith,* Justices.]

(a) The following is the case referred to:

MINARD *vs.* MEAD.

*By the Court,* GROVER, J. The question involved in this case is one of much public importance, although the amount between the parties is inconsiderable. By chapter 327 of laws of 1854, the canal commissioners were required to let by contract to the lowest bidder the repairs upon three superintendents' sections upon the Erie canal. The contractor is required to give adequate security for the performance of his contract. Further to secure such performance, fifteen per cent is to be retained from the monthly payments thereon until the expiration of the third month of the ensuing year, and provision is also made for declaring the contract abandoned, by the canal board, in case of failure to perform by the contractor; in which event the canal commissioner is to take charge of such sections, and make the repairs necessary to maintain navigation, in the manner required by law. By chapter 554 of laws of 1855, the canal commissioners are authorized to let by contract, under the provisions of the preceding act, the repairs upon any completed superintendent's section on any of the canals of the state, under the

approval and directions of the canal board.   The authorities establish the principle that when a franchise is conferred by the sovereign power upon a corporation or individual, in consideration of which such corporation or individual is required to perform certain duties, such corporation or individual is liable, in a civil action, to a party sustaining an injury peculiar to himself, from neglect of performance.   The cases establishing this principle are cited and reviewed in *Conrad* v. *The Trustees of Ithaca*, (16 *N. Y. Rep.* 158;) and in *Weet* v. *The Trustees of Brockport*, (*Reporter's note to case, supra.*)   It is argued by the plaintiff's counsel that a contractor for repairs upon the canal, pursuant to the statute, is also liable to an action at the suit of a party sustaining an injury peculiar to himself, in consequence of the neglect of such contractor to perform his contract.   The absence of any precedent for such action is not conclusive, if the case comes fairly within the principle of adjudicated cases.   If the action is sustained, it becomes important to determine upon what it is founded.   If upon contract, the defendant cannot be imprisoned upon the judgment; if, upon a breach of duty enjoined by law, he can be so imprisoned.   I am not aware of any cases holding that a contract entered into by an individual with the public, creates any higher legal duty of performance than if entered into with an individual; or that the breach is attended by any other consequence, unless such consequence is especially provided by statute.   When the sovereign power enters into a contract, simply, without by law providing an additional security to enforce performance, resort can only be had, in case of breach, to the remedies prescribed by law available to other parties in like cases.   Should it be held that such contracts create a duty analogous in its character to a duty enjoined by law upon corporations and individuals, the consideration for the performance of which was the grant of a franchise, it would follow that the breach of such contract could be punished by indictment.   Such a proposition, I think, no one will attempt to maintain.   Among the great number of misdemeanors existing at common law or created by statute, no mention is made of a failure to perform a contract with the public or sovereign power.   The simple non-performance of a contract entered into in good faith with the public or any other party, was never the subject of criminal prosecution.   In all cases where a duty of a public nature is positively enjoined by law upon a corporation or individual, failure to perform such duty is a misdemeanor.   It follows, then, that this action cannot be maintained upon the ground of a failure to perform a public duty enjoined by law.   The defendant has only been guilty of a breach of contract, and his person cannot be imprisoned upon any judgment recovered against him for such breach.   Can this action be maintained upon the contract?   The plaintiff is not a party thereto, and the general rule certainly is, that actions upon contracts can only be maintained by the parties and their representatives, or, under the code, their assignees.   It has never been the rule that more than one action could be maintained for a single breach of a contract.   In this case an action can be maintained by the canal commissioners against the defendant and his bail, and the state was legally liable to the

plaintiff for the loss of his horse in consequence of the failure to repair the towing path. I cannot see why they might not recover, therefor; such want of repair being the direct and proximate cause of the loss. At all events the action could be maintained, and a recovery had for such damages as were sustained by the state consequent upon the defendant's breach. I have not been able to find any case which, upon a careful analysis, countenances the idea that such a contract enures to the benefit of the entire community, thus enabling any one sustaining a peculiar injury to sustain an action for the breach. Yet that is precisely what is claimed by the plaintiff in this case. The position is, that any one entering into a contract with the public for the performance of any particular thing for a pecuniary compensation, becomes not only obligated to the public but to every member of community, and liable to a civil action, not only at the suit of the public, but of every individual sustaining a peculiar loss from a breach. This position is sought to be maintained by the reasoning of Judge Selden in *Weet* v. *Trustees of Brockport.* I have carefully examined the opinion of the learned judge in that case, and am unable to discover any such doctrine. True, the reasons assigned for the decision of some of the cases discussed may appear to sustain it, but when taken in connection with the cases themselves, entirely fail, I think, to establish it. In *Henley* v. *The Mayor and Burgesses of Lyme Regis,* (5 *Bing.* 91,) it was held that an action lay against the borough of Lyme, to recover damages sustained from neglect to repair certain sea-banks. In that case it was said by Park, J. in giving the opinion of the court, that wherever an indictment lies for non-repair, an action on the case will lie at the suit of a party sustaining any peculiar damage. This the learned judge supposes, in *Weet* v. *Trustees of Brockport,* is not quite correct, for the reason that, were it so, it would include public officers neglecting to perform official duties. He cites numerous cases showing that the latter do not fall within that principle. He then endeavors to show that the true reason of the adjudication was the consideration received by the borough for the obligation imposed. With deference, I submit the consideration had nothing to do with the question. Had the borough received no grant of land from the crown, or other valuable consideration, for performing the duty, yet had that duty been positively enjoined by law, the defendant would have been equally liable to an indictment or action, for a failure to perform.

I understand the judge in *Henley* v. *Mayor &c. of Lyme Regis,* (*supra,*) as speaking not of officers but of corporations and individuals, upon whom duties of a public nature were imposed by law, as liable to the action in all cases when liable to an indictment, that is, when a legal duty of a public nature had been violated. The error, I think, consists in placing the decision upon the ground of an agreement, for a consideration, instead of a duty imposed by law. Officers other than those who perform duties for individuals for a compensation received from them, would not fall within the principle; not because they may be placed in this position against their will, or receive no compensation for their services, but for reasons of public policy, which requires that the per-

Fish *v.* Dodge.

formance of their duties should be enforced by the public authority, and that they should not be harassed by a multiplicity of actions by individuals. With deference I think such are the grounds of their exemption, (if exempt, as to which I give no opinion.) The whole class of cases holding municipal corporations liable to individuals for a failure to perform duties enjoined by law, depend upon the same principle. The legislature, designing to promote the welfare of a particular locality, incorporate the inhabitants, and confer upon such corporation certain franchises and impose certain duties. The idea of construing this exercise of sovereign power of legislation into a contract by which the corporation so created promises, in consideration of the franchises, to perform the duties, strikes me as more ingenious than substantial. It is true that in our government such corporations are not created, as a general rule, and duties imposed without the consent of the people immediately interested, but there is nothing in the way of the legislature so doing. I apprehend that it would scarcely be regarded as a defense to an indictment or action, that the charter prescribing the duty had been imposed upon the people against their unanimous wish; yet in such a case the law could hardly imply a promise to perform a duty. The same principle applies to an individual to whom the franchise of a ferry, toll-bridge, or any other, is granted. The law, in all such cases, imposes a duty commensurate with the grant, and the grantee is liable to an individual for a special injury occasioned by nonperformance. It appears to me that this principle, and this alone, lies at the foundation of all the cases. Perhaps the case of *Fielding* v. *Fay* (*Cro. Eliz.* 569) may be regarded as an exception. In that case it was held that a custom requiring a parson to keep a bull and a boar for the use of the inhabitants of the parish was a good custom, and an action would lie against the parson by a parishioner for neglecting so to do. In another report of the case it is said that the action lieth not, unless the plaintiff show a prescription for it and a consideration for such prescription, as that the parson had an increase of tithes. Now of this case it may be said that a prescription presupposes a grant or contract having a lawful origin, and that should any one contract with the inhabitants of a district to do any thing for their benefit severally in consideration of a several payment by them of a certain tithe or any thing else, I can see no difficulty in such inhabitants severally maintaining an action against him, and if the contract was with the inhabitants all jointly, no difficulty except as to the joinder of parties. Yet I think this does not at all tend to show that one who had contracted with the commissioners of highways to repair, and neglected to do any thing about it, would be liable to a party losing a horse for want of such repair; or that an army contractor who for a certain sum had agreed with the government to deliver flour at a fixed time and place would, in case of failure to perform, be liable to a soldier for an injury sustained from want of bread. Once adopt the principle contended for by the plaintiff and there is no limit to the liability of a contractor with the public. Better adhere to the ancient landmarks, and sustain the action only where the duty is imposed by law positive in its character; and if this includes public

officers, subject them to the liability, unless exempt therefrom on the ground of public policy, or by a course of judicial decisions that cannot be disturbed. In none of the cases that have fallen under my notice, where an action has been maintained by an individual, was there any contract with the public upon which an action could be maintained by the public. Upon reason and authority I think this action cannot be maintained, and that the judgment of nonsuit should be affirmed.

HOYT, P. J. dissented.

[ERIE GENERAL TERM, September 3, 1860.    *Hoyt, Marvin, Davis* and *Grover*, Justices.]