Millen H. Robinson, Respondent, *v.* Calvin T. Chamberlain, Appellant.

One who, by contract with the State, assumes the duties and is invested with the powers of a public officer, is liable to an individual who sustains special damage by a neglect properly to perform such duties.

By the statutes of this State, the canal board is authorized to let the repairs upon any or all of the sections of the canals of this State to be made by contract; and the contractor is invested with the same general powers formerly given to superintendents of repairs, and the same general duties are imposed upon him.

*Held*, that when the lock-gates upon one of the sections so let by contract were defective and out of repair, of which notice had been given to the contractor, and in consequence of such defect the plaintiff's boat and its furniture, while passing through such gates, were injured by the giving way thereof, the contractor was liable for the damage thus sustained.

A public officer, or a contractor engaged to perform the duties of a public officer, is liable for negligence or malfeasance to any one sustaining special damage in consequence thereof.

*Daniel S. Dickinson*, for the appellant.

*Hotchkiss & Seymour*, for the respondent.

Peckham, J. The only question in this case is, whether an action will lie against a contractor, employed by the State, pursuant to law, to keep a portion of the canals in proper condition and repair, who neglects his duty, whereby the plaintiff sustains special damage.

It is a familiar doctrine, that, " when a corporation or individual is bound to repair a public highway or navigable river, they are liable to indictment for the neglect of their duty. (Per Nelson, J., in *The People* v. *The Corporation of Albany* (11 Wend., 539).

A navigable river is a public highway: our canals, open and free to all for navigation, upon payment of the toll fixed by law, as our turnpikes are, for travel upon like terms, are, I think, in every sense, public highways.

A failure to keep a public highway in repair by those who have assumed that duty from the State, so that it is unsafe to travel over, is a public nuisance, making the party bound

to repair liable to indictment for the nuisance, and to an action at the suit of any one who has sustained special damage. There is no decision in our courts at war with these principles. (*Lansing* v. *Smith*, 8 Cow., 151; *Smith* v. *Wright*, 24 Barb., 306; *Pierce* v. *Dart*, 7 Cow., 609; *Shepard* v. *Lincoln*, 17 Wend., 250; 3 Chit. Cr. Law, 568, Perkins' ed. of 1841; *Adsit* v. *Brady*, 4 Hill, 630; *Mayor of Lyme Regis* v. *Henly*, 1 Bing. N. C., 222).

If there be exceptions to this general rule, as to the liability of one bound to repair, I think it rests with him who claims their existence to prove them.

I am not aware of any distinction as to such liability, whether the obligation to repair arises from prescription, *ratione tenure* by act of parliament or otherwise.

In England, at common law, the general charge of repairing all highways is on the parishes through which they pass. (3 Chit. Cr. Law, 566.) But the duty may be devolved upon others. In this State, generally, commissioners of highways in towns are bound to the repair of highways, and it has been generally supposed that they were liable to an action when it was through their fault that the road was out of repair, and a party had thereby sustained special damage, though I admit that no action has yet been successful that I am aware of, for the reason that it has never yet been shown that the road was out of repair, and the damage occurred by their default, though actions based upon the assumption of their liability have not been uncommon. One of the justices of this court in an able opinion has lately denied the liability of commissioners of highways to a private action under any circumstances, but the case was not disposed of upon that ground; only two judges agreed with him to place the decision on that ground. (*Garlinghouse* v. *Jacobs*, 29 N. Y., 297.) Nice distinctions have been made as to such liability.

In *Adsit* v. *Brady*, *supra*, the broad rule is laid down, that " when an individual sustains an injury by the misfeasance or nonfeasance of a public officer, who acts or omits to act contrary to his duty, the law gives redress to the injured

party by an action adapted to the nature of the case." (4 Hill, 632.)

This is a healthful rule, sound entirely in public policy, if as a rule of law it can be questioned. As a rule of law, as there applied, it has stood for nearly a quarter of a century, and I think should continue.

In *Weet* v. *The Trustees of the Village of Brockport* (16 N. Y., 168, note), Mr. Justice SELDEN denies this doctrine, so far as it applies to public officers, insisting that the only remedy against them is by indictment, because they are officers. Being officers, "their contract is treated as made with the defendant alone, while that of the individual is deemed to be made with and to inure to the benefit of every person interested in its performance." (16 N. Y., 168.)

The portion of the opinion in the last case referring to *Adsit* v. *Brady*, was unnecessary to the decision of that case. The defendants in *Weet* v. *The Village of Brockport* were held liable for the special damage sustained, both for nonfeasance and malfeasance, the judge basing their liability upon their contract, express and implied, contained in their accepted charter.

In *Fisk* v. *Dodge* (38 Barb., 163), the Supreme Court decided directly against the last case, holding that an officer is liable for misfeasance or malfeasance, whereby a party sustains special damage, but that an individual contractor is not; and this was founded upon a prior decision in the eighth district to the same effect.

In my judgment, the decisions, irrespective of the reasons therefor, in *Adsit* v. *Butler* and in *Weet* v. *The Village of Brockport*, are both right, and should be sustained. The latter decides this case.

But I cannot concur in the reasoning of the learned judge in the latter case, which makes distinctions where there is no real difference in principle.

The principle he derives from the English authorities, and in which he concurs, is, "that whenever an individual or a corporation, for a consideration received from the sovereign power, has become bound by covenant or agreement, either

express or implied, to do certain things, such individual or corporation is liable, in case of neglect to perform such covenant, not only to a public prosecution by indictment, but to a private action at the suit of any person injured by such neglect. · In all such cases, the contract made with the sovereign is deemed to inure to the benefit of every individual interested in its performance." (Id., 163.)

But, he says, except in cases of sheriffs, clerks, &c., who receive a compensation from private parties, "the contract of the officer is treated as made with the government alone. The reason for the distinction appears to be that intimated by Gould, J., in *Lane* v. *Cotton* (4 Ld. Raym., 646), that the duties in the one case are imposed upon the officer for public purposes only, while in the other they are voluntarily assumed with a view to private advantage."

Is not the contract when there is no officer, "made with the government alone," in every case cited? Certainly.

But in the case of contract by government with a contractor, not with an officer, "it is deemed to inure to the benefit of every individual interested in its performance."

And why does not the contract with the officer "inure to the benefit of every individual interested in its performance?"

If Mr. Justice Gould did assign the reason in *Lane* v. *Cotton* above stated (though I cannot find it as reported in 7 Ld. Raym., 646, on careful reading), it may have been well in 1701, when that case was decided; but now, in this age, I think I am safe in saying that offices in general are accepted because the incumbents suppose their worldly condition will thereby be improved, pecuniarily, socially, or otherwise.

As to the voluntary assumption by contract, or the imposition of certain duties upon an officer, does any one accept an office in this country involuntarily?

In truth, it seems to me there is no sound distinction whatever in the two cases. And in *Lane* v. *Cotton*, which was an action against the postmaster-general for the miscarriage of a package, which seems to have been lost by the negligence of an inferior officer responsible to the crown, not a

mere clerk, HOLT, Ch. J., dissented from the judgment for defendant, and Mr. Justice Powys held that an action lay against the subaltern, Breese, whose negligence caused the loss, hence the plaintiff was not without remedy; and that by the express words of the patent the defendant was not answerable "for the default of the inferior officers."

The same doctrine was afterwards held in *Whitfield* v. *Lord Le Desprurer* (Cowp., 754), that the postmaster was not liable for a theft in the office committed by one of the clerks who gave security to the crown.

But Lord MANSFIELD, in giving the opinion of the court there, said, "as to an action in the case lying against the party really offending, there can be no doubt of it. If the man who receives a penny to carry the letters to the post-office loses any of them, he is answerable — so is the sorter in the business of his department — so is the postmaster for any business of his own." To the same effect is the language of Chief Justice BEST, who said: "Now I take it to be perfectly clear that if a public officer abuses his office, either by an act of omission or commission, and the consequence is an injury to an individual, an action lies against such officer. The instances of this are so numerous, that it would be a waste of time to refer to them." (*Henly* v. *The Mayor of Lyme Regis*, 5 Bing., 91; 15 Cr. Law, 383.) But I did not intend to cite authorities to support *Adsit* v. *Brady*. These are the authorities referred to, to impeach that case.

The same principle that gives relief against a contractor with the government, gives the like relief against an officer of government.

An officer really contracts with the government faithfully to discharge the duties of his office, and he usually adds an oath to that effect. He voluntarily assumes the duties. The public, the individuals thereof, usually are more especially interested in the proper discharge of the duties than the government itself.

The principle on which the action is based in each case, against an officer or contractor with the government, is a broad principle of public policy, essential to the public wel-

fare. The law presumes that an office is created for the benefit of the public.

It is admitted that sheriffs, clerks, &c., are responsible to individuals for mal or nonfeasance, because it is said they receive specific compensation from the individuals for the specific service, and hence there may be said to be a contract for its proper performance. In fact there is no more a contract in such case, than if the clerk or sheriff were paid a salary, and either he received no fees, or received them for the State or county.

In both cases he acts under the law, which makes it his duty to render those services, in one case on certain prescribed terms, and in the other, unconditionally.

Suppose a county clerk received a salary and was entitled to no fees — a party presents to him a record to file in his office and to docket a judgment. He persistently refuses to do his duty by filing it, whereby the amount of a judgment is lost; a farm on which it would have been a lien is in the meantime sold and conveyed to a bona fide purchaser. I think there can be no doubt as to the liability of the clerk, though he received and was entitled to no fees. He violated his duty as an officer to the party's damage. How poor a compensation to him to say that the clerk may possibly be removed or indicted. Does that pay him for his loss? In fact, he is left without remedy. In the case at bar, according to the reasoning in *Weet* v. *Brockport Trustees* the defendant is clearly liable, because his contract with the government "inures to the benefit of every one interested in its performance," but, if the defendant had assumed the same duties as superintendent — as an officer — he would have been under no liability to those whom his nonfeasance or his malfeasance would generally most injure, viz., the navigator of the canal.

Yet, each is employed by the same power, the government, and, according to law, paid by the same, and their duties are substantially the same, the only difference being in the mode of their appointment or employment. In one case the man who will agree, and give security therefor, to

do the repairs at the lowest rate, is appointed or employed according to the statute.  In the other, the one who secures the preference of a majority of the canal board is appointed and gives security.  Each agrees to do his duty—the contractor in writing, the officer by implication and by his oath. Upon every principle of sound reason their liability to persons injured by their negligence should be the same.

*Garlinghouse* v. *Jacobs* is not in conflict in the decision, and may be distinguished in the reasoning of the judge from this case.  Mr. Justice WRIGHT there insisted that commissioners of highways were in no case liable to a private action, because there is not that precision and certainty of duty that should make them responsible in a civil action for an omission to perform it; of themselves they are not supplied by law with the means, or with power to obtain them, "to make them discharge the duty under all circumstances."  That "it will not do to say that they are thus liable when they happen accidentally to have funds at command to make repairs and omit to make them, and are not liable when without them." (Id., 309.)

It is not pretended that either of these objections has any force in the case at bar.  The duty here was specific and clear, the means of the defendant ample; or if not ample, it was his own fault, of which he cannot take advantage.

But it is not perceived why the commissioners of highways should not be held liable for a neglect of duty when they have ample funds in their hands, and the injury to an individual occurs from their wrongful omission to use them, though they may not always have such funds.  In other words I do not see why because a man cannot be convicted when he is innocent, that he should not be condemned when he is guilty.

Reason and public policy alike exempt judicial action from liability, in order to secure the perfect independence of the judiciary and for other controlling reasons.  Exclusive of judicial action, every officer in the land, in my judgment, is responsible for a violation of his official duty, to him who sustains special damage thereby; a sound, healthful rule,

imparting life and efficiency to officers and security to the public. Upon principle as well as under the authority of this court as declared in *Weet* v. *Trustees of Brockport*, this defendant is liable.

Having received a consideration from the sovereign power for performing a public duty, he is liable for a neglect to discharge that duty to the plaintiff, who has thereby sustained special damage.

The judgment should be affirmed.

Hunt, J. The complaint alleges that the defendant was a contractor with the canal commissioners to keep in repair the first section of the Chenango canal, during the year 1856; that in September of that year the plaintiff was navigating the canal with his boat, the "B. F. Adams," and entered lock No. 30 on the section in question; that the lock-gates were old, rotten and insufficient, and gave way, causing great injury to the plaintiff's boat and furniture, and that the defendant had previous notice of the condition of the gates. The complaint further alleges that the defendant had charge, direction and control of the said section of the canal, and that it was his duty to keep the same, including the locks, in good repair and in navigable condition.

At the circuit the plaintiff was nonsuited upon his opening. The general term reversed the decision of the judge at circuit. The defendant appeals to this court, stipulating that judgment final may be awarded against him, in case he is unsuccessful in his appeal.

The present case has been twice elaborately argued in this court, and similar cases have been twice carefully presented at the general terms of the Supreme Court.

The proposition is claimed to be well settled, that when a franchise is conferred by the sovereign power upon a corporation or individual, in consideration of which certain duties are required to be performed, such corporation or individual is liable in a civil action, to a party sustaining an injury peculiar to himself, from neglect of performance. To this are cited numerous cases, the most prominent of which

is that of *Mayor of Lyme Regis* v. *Henley* (1 Bing., N. C., 232; 3 Bar. & Ad., 77). It is claimed, on the other hand, that Chamberlain was simply a party to a contract with the canal commissioners, by which he undertook to keep certain locks in repair, and that, if he failed in the performance of his contract, he is liable to the other party only, and that strangers to the contract have no claim upon him for its breach. Many authorities are cited to this proposition, the general principle of which is not disputed.

Prior to the passage of the statutes of 1854, 1855 and 1857 hereafter to be mentioned, the repairs upon the canals of this State were made by officers appointed by the canal board, called superintendents of repairs. These officers were required to execute bonds for the faithful performance of their trusts, and it was their duty, under the direction of the canal commissioners, to keep in repair the sections of the canal and locks connected therewith, committed to their charge, to make all necessary contracts for that purpose, and faithfully to expend the moneys intrusted to them by the canal commissioners. (1 R. S., 236.)

The same statute (p. 250) provided that all suits for penalties and forfeitures, or for damages in behalf of the State, should be prosecuted in the name of the people of the State by such persons as the commissioners of the canal fund, in their regulations, should direct, and that the moneys received should be paid over to such commissioners. It was thereby also provided in numerous cases, for injuries to the canals and their structures, that the suits should be brought in the name of such superintendent.

In *Adsit* v. *Brady* (4 Hill, 630), it was held that this superintendent, under the statutes cited, was a public officer; that he had the care and control of the canals, subject only to the general direction of the canal commissioners, that it was his duty, without waiting for orders from the commissioners, to repair a breach in the canal or to remove obstructions from it; that, having left a rock remaining in the canal, after notice of its presence, by which the plaintiff's boat and cargo

were injured, he was responsible in an action to recover damages for such injury.

The same principle was announced in the case of *Shepherd. v. Lincoln* (17 Wend., 250), where the superintendent was engaged in repairing a bridge, and his workmen left it so insufficiently guarded at night that the plaintiff and his horse and wagon fell through the bridge and were seriously injured. The defendant was adjudged to be responsible for the damages. Both of these cases were determined by the late Supreme Court, the opinion in the first case being given by Bronson, J., and in the last by Cowen, J., and are authority in this court. The superintendent was condemned on the ground that he was a public officer, and that he had neglected his duty.

What constituted him a public officer, or upon what principle was it claimed that he held a public office? An office is defined to be " that function by virtue whereof a man hath some employment in the affairs of another, as of the king or of another person." (Cowell, 2 Tomlin. Law Dic., " office.") " And every man is a public officer who hath any duty concerning the public, and he is not the less a public officer where his authority is confined to narrow limits; because it is the duty of the office and the nature of the duty which makes him a public officer, and not the extent of his authority." (Id., and Carth., 479.) This principle was applied to commissioners to lay out a road (*People v. Hayes*, 7 How. Pr., 248), who were held to be public officers. It was decided by the late chancellor, and by the late Court of Errors, that attorneys and counsellors at law were public officers, and held a public trust and office, within the meaning of the Constitution. (*Seymour v. Ellinson*, 2 Cow., 28, 29, and note; *Case of Daniel Wood* before the chancellor.)

Commissioners appointed by the governor under a statute, to superintend the construction of a building, are officers within section 16, article 4 of the Constitution, which provides that where the duration of an office is not prescribed by the Constitution, it may be declared by law, and when.

not so declared, shall be during the pleasure of the appointing power. (*People* v. *Comptroller*, 20 Wend., 595.)

The keeper of the Albany county penitentiary is a public officer, within section 124 of the Code, which enacts that actions against public officers for acts done by virtue of their office, shall be brought in particular counties. (*Porter* v. *Pilsbury*, 11 How. Pr., 240.) A collector of a village tax, appointed by the trustees of the village, is held to be a public officer, within the statute providing for the punishment of official delinquency. (*The People* v. *Bedell*, 2 Hill, 196.)

I conclude that the superintendent was a public officer, because he was intrusted with the public duty of the management, care and control of the canals of this State, or a portion of them, and was intrusted with the protection of its structures, with the power of directing the movements of those engaged in their navigation, and with the power to bring suits in behalf of the State. The fact that he was appointed by the canal board does not appear to be important. That board is itself but a subordinate creation, for the execution of certain specific duties. It is the character or duties of the position, and not the mode of appointment, that determines whether the position is an office or a simple employment. The superintendent, as stated, was appointed by the canal board. The keeper of the penitentiary, above mentioned, was appointed by the supervisors of Albany county, in conjunction with the mayor and recorder of the city. The village collector was appointed by the village trustees. The persons designated to superintend the construction of the public buildings were named by the governor. The commissioners to lay out a road were designated by an act of the legislature, while the office of an attorney and counsellor was within the possession of any person having the necessary qualifications.

I think the defendant in this action, as a contractor under the statutes of 1854, 1855 and 1857, was invested with the powers, and that he is subject to the liabilities of a public officer.

By the act. chapter 105, Laws of 1857, the canal board is authorized to let by contract, under. such regulations as the board shall prescribe, any or all sections of the canals of this State, where, in their judgment, the repairs may be made more economically than by the superintendents. It is a mere change of instrumentalities; in each case, under the regulation of the board, and for the purpose of economy.

By section second of the act, the repairs are to be made under the supervision of the resident or division engineer, who is to determine whether they are promptly and properly made, and with suitable materials. This section also provides, in substance, that the contractor is intrusted with the management of the locks and the general care of navigation, as his compensation is to be withheld, if the engineer certifies that the locks are not well and properly attended, or the navigation is not kept free from jams from boats, timber or other obstructions, or that the feeders are neglected, or that there is not sufficient water for navigation.

By the fifth section of the same act the person so contracting for repairs is empowered to sue, in the name of the State, and recover for all trespasses upon the canal or other works, or upon any of its structures, and recover the same penalties imposed by law or by resolution of the canal. board, as may be recovered by a superintendent; and this includes the power at his discretion to seize and detain all boats navigating the canals, until the determination of such suits. (Statute Powers and Duties of Canal Board, § 292, [171]; 1 R. S., 247.) By the same section of the statute he is authorized to sue in his own name and recover to his own use, all damages he may have sustained in consequence of such acts.

By section 5 of the act of 1860, ch. 213, it is provided that any officer, agent or employé of the State, contractor for canal repairs, any person in his employ and any other person having charge or control over. the canals of the State, who shall directly or indirectly agree to receive any money, &c., for the use of water, &c., shall be deemed guilty of a misdemeanor.

In connection with the right to sue in the name of the

State, heretofore granted, the contractor has authority to direct the floats which may be collected near a breach, to move backward or forward, or to lie in such place as he shall think advisable, and for a refusal to comply promptly with his directions, the person in charge of the float shall be subject to a penalty of ten dollars. (No. 42, Canal Reg.)  So if any raft or tow of timber consists of too many sticks of timber, or extending too far outward, or approaches too near another tow, the owner is subject to a penalty of ten dollars, to be collected by the contractor. (Reg. 43.)  By regulation No. 2, if a boat draws too much water, the contractor may immediately compel him to unload and to pay a fine of $25.  So if she does not carry a proper light, or is not properly moored at a dock, or is too slow in entering or leaving a lock (36, 37, 38), or has not a proper rudder, or if her owner attempts to open a lock gate (44, 46), a like penalty is incurred, to be recovered by him.

It would be tedious to go through with the canal regulations or statutes in detail, and it is sufficient to say that the contractor is authorized to sue, in the name of the State, for breach of the canal regulations, from No. 2 to No. 58, with a few exceptions, and for breaches of the statute provisions from 152 to 182, with a few exceptions (see Canal Reg., 66), and that these contain the entire system for the government of the canals, their maintenance, their police regulations and their litigations.

This entire control of the great public works of the State, the power of instituting suits in the name of the people, of seizing and detaining every float, for what he may allege to be a breach of the law or of the canal regulations, the building, repairing and protecting all the canal structures, I think devolves upon him the duties of a public officer.  Indeed, I am unable, upon a careful examination of the statutes, to find a single important power, formerly invested in the superintendent, of which the contractor is now deprived. They are all given to him affirmatively.

The chief difference in their positions arises from the circumstance, that the superintendent was appointed by

the canal board at a fixed salary, and used the funds and the credit of the State in carrying on his operations, while the contractor is ascertained by a public bidding, subject to the discretion of the board, uses his own funds, furnishes his own materials, and may make or lose money on the result. This does not, in my judgment, affect his position as being charged with the duties of a public office.

I do not discover in these laws any provision that requires the contractor to take the oath required by the Revised Statutes to be taken by every public officer, nor am I aware of any portion of the statutes quoted which would render him indictable in the event of failure to perform his duties. It is possible that he may not, therefore, be technically a public officer. I have, however, endeavored to show that he is allowed to exercise the powers of such an officer, and that the substantial control and management of that great public interest known, as the navigable canals of this State, with extraordinary powers, is intrusted to him. He is invested with the powers and duties of a public officer, and if he neglects to perform them, and an individual sustains damages thereby, I think he should be liable as a public officer.

The judgment should be affirmed.

SMITH, J. I think the judgment of the General Term in this case should be affirmed on the ground that the defendant by his contract, assumed the absolute duty of repairing a public thoroughfare, and is therefore liable in a civil action in behalf of any individual who has sustained special damage as the immediate consequence of his neglect to repair. It is not necessary to the right of action to hold that the defendant is a public officer. By his contract with the State he assumed a duty to the public. If he is not to be regarded as a public officer in all respects, it is at least true that certain public functions formerly discharged by public officers were *farmed out* to him by authority of law, and for a breach of duty in respect to the exercise of such functions, he is liable to any person injured thereby. (*Lane* v. *Cotton*, 1 Ld. Raym., 646, per Powys, J.)

His duty and liability to persons navigating the canals do not depend on his receiving a compensation from them directly, such as tolls or fees.

His duty being absolute, unconditional and fixed, differs from that of commissioners of highways, upon whom no duty to repair attaches, until funds are provided for that purpose by the public. (29 N. Y., 397.)

As an affirmance of the judgment below will overrule the decision of the Supreme Court in the case of *Fish* v. *Dodge* (38 Barb., 163), in which I took part, it is proper to say that in that case I regarded the prior decision of the same court in the eighth district, in *Minard* v. *Mead* (id., 174), as controlling, and I therefore followed it, although not satisfied with it.

Judgment affirmed.