THE HARTFORD AND NEW YORK STEAMBOAT COM-
PANY, APPELLANT, *v.* THE MAYOR, ETC., OF THE CITY
OF NEW YORK, RESPONDENT.

*Lease of wharf in New York — duty of city as to repair of — covenant as to, by lessee —
rebuilding of.*

The complaint alleged that the defendant leased to the plaintiff a wharf for ten
years from May 1, 1865; that in 1867 the wharf fell down, and upon defend-
ant's refusal to rebuild the same, plaintiff did so at a cost, including damages
to business, exceeding $30,000; that the wharf was old and insecure from natu-
ral wear and decay and hidden defects at the time the lease was made, and that
these defects were the cause of its fall; that the defendant, previous to and at
the time of the making of the lease, represented to plaintiff that the substantial
repairs would be made by it, and that plaintiff would have to make only the
ordinary and usual repairs. The lease contained a covenant, by which the
plaintiff covenanted to repair and keep the said wharves in good repair at
its own proper cost and charges, and surrender the same at the expiration of
said term in as good condition as they were at the time it took possession
thereof, the natural wear and decay excepted; that all alterations and improve-
ments and repairs, of whatsoever kind, would be made at its expense, and that
they would keep the wharves in good condition and in safe and proper repair,
including especially the string-pieces and other superficial portions thereof, for
safe usage.

*Held,* that, as no fraud or concealment on the part of the defendant was alleged,
the express covenants of the written lease could not be varied by proof of the
alleged representations.

That whatever duty to keep the wharf in good repair the defendant might owe
to persons lawfully traversing and using the wharf as a public street, the plain-
tiff could not, as against its express covenant, avail itself of it in this action.

That even if it were the duty of the defendant to keep the wharf in repair, yet
when it fell down, whether or not to rebuild it was a question resting in the
discretion of the defendant, and the plaintiff could not impose any liability
upon it by its action in rebuilding the same.

APPEAL from a judgment in favor of the defendant, entered upon
an order sustaining a demurrer to the complaint.

*J. S. Lawrence,* for the appellant. The city was bound to main-
tain the pier and bulk-head in a safe condition, to be used by the
public as a street. (Bradley on Distresses, 191; *Buckbee* v. *Brown,*
21 Wend., 116; Dillon on Munic. Corp., § 69; 37 N. Y., 284; 1

Kern., 471; 3 Kent's Com., 432.) It is for the public convenience that the legislature authorizes wharves to be erected on navigable rivers. (*Thompson* v. *The Mayor*, 1 Kern., 121; *Smith* v. *Levinus*, 4 Seld., 474; *Marshall* v. *Vultee*, 1 E. D. S., 306.) And where a public body is clothed by statute with power to do an act which concerns the public interests, the execution of the power may be insisted on as a duty, though the statute conferring it be only permissive in its terms. (*Hutson* v. *The Mayor*, 5 Seld., 168; see Judge EDMOND's 13th Rule on Interpretation of Statutes in his introduction to his edition of the Revised Statutes; Kent's note to city charter, No. 53; charter of 1873, § 119.) The covenant to repair is not a general, but a limited one. "If he covenants to keep the premises in repair and leave them in the same state as he found them, he is merely required to use his best endeavors to keep them in the same tenantable repair, for natural and unavoidable decay is no breach of this covenant." (Taylor's Landlord and Tenant, § 357; 1 Sheppard's Touchstone, 168, 169; *McIntosh* v. *Town*, 49 Barb., 555.) Furthermore, in this case the consequence of natural wear and decay are expressly excepted from the operation of the covenant, and as the destruction of the pier and bulkhead in this case resulted from natural wear and decay, it necessarily follows that this covenant does not affect the case. The representations set forth in the third subdivision of the complaint may be proved (*Lindley* v. *Lacy*, 17 C. B., 578; *Morgan* v. *Griffith*, 6 L. R. Ex., 70; *Erskine* v. *Adeane*, 6 Eng. Rep. [Moak's ed.], 594; *Mann* v. *Nunn*, 43 L. J. C., 241), where verbal representations were shown under similar circumstances. These representations concern the nature and qualities of the subject-matter to which the agreement refers, and on that ground are admissible. (1 Greenl. on Evi., § 286; *Knapp* v. *Warner*, 57 N. Y., 668.)

*D. J. Dean*, for the respondent.

DANIELS, J.:

The complaint alleged that a wharf leased by the defendant to the plaintiff for the term of ten years from the 1st day of May, 1865, on or about the month of April, 1867, fell down and was wholly gone, and upon the refusal of the defendant to reconstruct

it the plaintiff rebuilt it at an expense, including the loss of its business in the meantime, exceeding the sum of $30,000. It was alleged that the wharf was an old one and substantially destroyed by natural wear and decay, and hidden and secret defects concealed under the surface of the water at the time when the lease was made, and that it finally fell because of the defendant's omission to substantially repair it; and for that reason, and also because it was represented by the defendant previous to the making of the lease that the substantial repairs would be made by it, and that the plaintiff should be under no obligation to make any other than the ordinary and usual repairs, it was claimed that the defendant was liable to reimburse the expenditures made and the loss incurred from the suspension of the plaintiff's business. No fraud, either by intentional concealment or misrepresentation, was alleged against the defendant; and as the lease was in writing and subscribed by the parties in such a form as wholly to exclude proof of the representations mentioned; they can, neither of them, be considered for the purpose of determining the legal extent of the defendant's obligation, for it is exceedingly well settled that all anterior representations of what either of the contracting parties may propose to do concerning the subject-matter of the contract become merged in the written instrument afterwards executed by them, and for that reason they are inoperative when no fraud or mistake has occasioned their omission from its terms. (2 Parsons on Contracts [5th ed.], 547, 549; *Riley* v. *City of Brooklyn*, 46 N. Y., 444.) As the plaintiff was in no way deceived or mistaken concerning the contents of the lease, it cannot impose any obligation upon the defendant in consequence of what may previously have been stated, but which was allowed to form no part of it when it was afterwards reduced to writing and mutually executed.

An effort was made by the plaintiff's counsel to maintain the liability upon the duty resting upon the defendant to keep its wharves in a reasonably safe state of repair. But the serious difficulty in the way of sustaining that theory has been created by the stipulations which were inserted in the lease. They changed the burthen of the legal duty between these parties by imposing the obligation of its observance upon the plaintiff. They were plain and explicit, and expressed in the following manner: "And the parties of the

second part (the plaintiffs) further covenant that during the continuance of said lease they will repair and keep the said wharves, piers or bulk-heads in good repair at their own proper cost and charges and surrender the same, at the expiration of said term, in as good condition as they are at the time they take possession thereof, the natural wear and decay excepted.

"And that all alterations and improvements and repairs, of whatsoever kind or nature, are to be made at the expense of the party of the second part.

"And the said parties of the second part for themselves, etc., hereby expressly covenant and agree that they will, during the continuance hereof, keep the wharves in good condition and safe and proper repair, including especially the string-pieces and other superficial portions thereof for safe usage, and in default of their so doing at any time after notice from the comptroller or other proper officer of the city that such repairs are necessary, and ten days thereafter the said parties of the first part may repair the same, and the said parties of the second part (plaintiffs) their successors and assigns agree to pay to the parties of the first part all expenses of such repairs and interest, damages by the elements alone excepted."

And they subjected the plaintiff to the obligation of making all such repairs as should be required by the demised structure during the continuance of the term created in the lease. For that purpose no duty rested upon the defendant in the plaintiff's favor. The duty insisted upon cannot be implied from their relations or from any thing contained in the written instrument. ( *Witty* v. *Matthews*, 52 N. Y., 512 ; *Lockrow* v. *Horgan*, 58 id., 635.) For these reasons, and those also assigned in the opinion of Mr. Justice DONO-HUE, upon the decision of the demurrer to the original complaint, the judgment ought to be affirmed.

Opinion of DONOHUE, J., at Special Term :

In this case the complaint in substance is that the plaintiffs, a corporation acting as common carrier by water, and having a large business, leased wharfage of the pier mentioned in the complaint, the plaintiffs to do the repairs of all and every kind during the lease. The ground of action is that the pier leased in April, 1865, in consequence of its then state from wear and tear and the addi-

tional use up to April, 1867, had to be repaired to the extent in the complaint stated; that the defendants were by law bound to keep the wharf in order and that the plaintiffs asked them to so put it, and that as the defendants would not plaintiffs did and ask to receive the money they paid for repairing it. To this defendants demur and I think the demurrer must be sustained.

Admitting all that is said about the public duty of the defendants, and that a man has a right to demand from the city the repair of the street in front of his house, and in default of the city doing it, he may, and charge them. Admitting for the argument all this, the plaintiffs have, by the terms of their lease, assumed all this duty, and whatever may be the rights of the public for injuries sustained by the non-performance by the city of its duties the plaintiff, who has assumed by the covenant of the lease this duty, cannot, as between it and the city, escape from its covenant.

In *Taylor* v. *Atlantic Insurance Company* (37 N. Y., 278) the General Term of the Superior Court held expressly, as between lessees of the pier and the city, that any obstructions which, as between the city and themselves, in order to enjoy their grant, the lessees were bound to remove, the duty being on them to do it, they had no redress for the loss except as against a wrong-doer. (See 4th and 5th findings, page 278.) This was in no way disapproved by the Court of Appeals, but acquiesced in.

In *Davenport* v. *Ruckman* (37 N. Y., 568) the same principle, in substance, was stated, that the person whose duty it was to repair the sidewalks was responsible to third parties for defects in such sidewalk; and as to such third parties the city was also liable. That case was one where the city and householder held no relation by covenant with each other, and their obligations arose solely out of their obligations to the public.

In *Robinson* v. *Chamberlain* (34 N. Y., 389) the same doctrine, as contended for in this case by the defendant, is carried beyond what is required here. There it was expressly held that where a person acts as a public officer, but under a contract with the State to perform certain work, but does his work negligently, as to a party injured by such neglect to repair he was liable. If the principle contended for here by plaintiff is correct this could not be so.

In *McCarthy* v. *The City of Syracuse* (46 N. Y., 194) the case

turned entirely on the duty, as to third parties, of the city in keeping the streets in repair, and so I find is the substance of the other cases cited by plaintiff. In none of them can I find any approval of a principle holding that the city cannot, as between itself and its tenants, make such covenant as any other person can make, always saving the rights of third parties, and that it does not lie in the mouth of such tenant to say the covenant is improper, while he keeps the lease. In other words he cannot take all the benefit and throw all the loss on the city.

The statement of the case here is one showing no fraud or misrepresentation. Plaintiff had full means of ascertaining the condition of the pier, and did not offer to surrender but wanted to hold the contract and add to it a covenant to do what he had already covenanted to do.

The case, it seems to me, presents a single question on this covenant, who is bound for the expense, and it seems clear the plaintiff was. But it seems to me, further, that it is not for the plaintiff to assume what streets the defendant should keep open or what new streets it shall open, or what wharves the city shall keep up or what new ones build, and because it cannot get a pier to suit it as well as this rebuilt.

I know of no obligations on the city to rebuild or keep up any particular pier if they see fit to take it up, and it does not seem to me that the city was bound, as regards this plaintiff, to build or rebuild a pier which would be more convenient to this plaintiff than in its dilapidated state.

In the judgment of the officers of the plaintiff this was the best pier for them; that judgment the city is not bound by. It has been a question of sound public policy whether these and similar steamboats should be allowed so low down at all. Whether plaintiffs are to be allowed to determine this question and build or extend piers to suit them is not, it seems to me, open to question. They have no such right.

The city takes the ground that supposing they are wrong on both these points, that is as to the covenant obligations of plaintiff to do the work, and that the defendants were bound to maintain the existence of this wharf, it is not for the defendants to repair or rebuild and charge defendants with the price. It seems to me that on this point the city is equally right.

I know of no case going to the extent of holding that where a duty exists in a corporation of maintaining piers, that when they are in default any person claiming to be injured may do the duty thrown on the corporation and charge them with the value.

It is hardly necessary to discuss the question; such a principle would leave the corporate right much more embarrassed than either policy or justice would require.

Judgment for defendant.

DAVIS, P. J., and BRADY, J., concurred in foregoing opinion o₄ DANIELS, J.

Judgment affirmed.