May Term, 1850.<br>Lynn<br>v.<br>Adams.

---

## Lynn v. Adams.

A private action will not lie against a supervisor for damages sustained from his neglect to keep the roads and bridges in his district in repair.

APPEAL from the *Dearborn* Circuit Court.

Smith, J.—This was an action on the case by *Adams* against *Lynn*. The declaration avers that *Lynn* was a supervisor, and that, in consequence of his neglect and failure to keep in repair a certain bridge in his road district, the plaintiff's horse fell therefrom and was killed. The cause was tried upon the general issue, and the plaintiff obtained a verdict and judgment for the value of the horse.

There are several errors assigned, but it is necessary first to examine the question, whether an action will lie against a supervisor for damages sustained in consequence of his neglect to keep the roads and bridges in his district in repair.

In the case of *Bartlett* v. *Crozier*, 15 John. 250, it was decided by the Supreme Court of *New York*, that such an

Monday,<br>June 24.

May Term, 1850.

LYNN
v.
ADAMS.

action could be maintained against an overseer for wilful neglect, in suffering a bridge to be out of repair, whereby the plaintiff's mare fell through and broke her leg, on the broad ground that a public officer, who wilfully neglects his duty, is responsible to any individual who suffers damage in consequence of such neglect. This case was taken up to the Court of Errors, and the judgment was reversed. 17 John. 439. The chancellor (*Kent*), in giving the opinion of the Court of Errors, says: "When the law renders a public officer liable to special damages for neglect of duty, the cases are those in which the services of the officer are not gratuitous, or coerced, but voluntary and attended with compensation, and where the duty to be performed is entire, absolute, and perfect." Upon an analysis of the statutes of *New York* upon the subject, he comes to the conclusion that the duty of the overseer to repair bridges is not absolute, but depends upon contingencies, and rests much on the discretion of the overseer. He finds that the duty of keeping the roads in repair is divided between the overseers and the commissioners of highways, and that there are "no certain, stable, absolute duties imposed upon either, and, therefore, neither the commissioners or the overseers are liable to a private suit, or to any suit for neglect of duty but such as is expressly provided by the statute."

The statutes of this state regulating the duties of the commissioners and supervisors, are very similar to those of *New York*, under which the above decision was made. The board of county commissioners have the care and superintendence of the highways and bridges, and it is made their duty to give directions for the building and repairing of bridges within their respective counties. The duties of the supervisor are not any more absolute, definite, or certain than in *New York*, nor are the supervisors less subject to the government and direction of the commissioners. The same penalty is provided for neglect of duty by the supervisor, to be recovered by his successor in an action of debt, or by presentment or indictment in the Circuit Court; and there is also a provision that any

person conceiving himself aggrieved by the refusal of a supervisor to do any act or perform any duty required by law, may complain to the board of commissioners, whose decision thereon, after a hearing of the parties, shall be final. R. S. c. 16, a. 3.

These provisions render the supervisors, in many respects, the subordinate agents of the commissioners. Their services are not voluntary, but, when elected or appointed, they are required to serve or discharge themselves by the payment of a sum of money. If they do neither they are subject to indictment.

There is a local law, applicable to *Dearborn* county, which transfers the duties of the county commissioners as commissioners of highways, to certain township trustees, and gives to those trustees the appointment of the overseers, and authority to pay them such compensation as the trustees may deem proper, out of the township treasuries, but in other respects it makes no material change in the duties and obligations of the overseers. Laws of 1834, p. 147.

In the case of *Bartlett* v. *Crozier*, the Chancellor says: "The argument to be drawn from the *English* law on this subject is very strong against the right of action. There are officers under the *English* law, equally as under ours, charged with repairing the roads and bridges; they have existed and been known from ancient times, and yet there is no case in the *English* books, nor any precedent under our colonial government, of any such private action." The case of *Russell* v. *The Men of Devon,* was cited as the only *English* case bearing any analogy to that under consideration. That was an action to recover, in a private suit, damages suffered in consequence of a bridge being out of repair, and two of the inhabitants of the county were charged in behalf of the rest. It was held by the King's Bench that no civil action lay against the inhabitants of a county for an individual injury in consequence of a breach of their public duty, the county not being a corporation for that purpose, and having no corporate fund.

The case of *Hedges* v. *The County of Madison*, 1 Gilm. 567, is cited by the counsel for the defendant in error, as an authority in favor of his right to maintain this suit, but it is not. That was a suit against a county for an injury sustained by the plaintiff's horse being killed by falling through a bridge, and it was held that the action would not lie on the authority of *Russell* v. *The Men of Devon*, and on the general principle that, where duties are not voluntarily assumed but are required to be performed for the public benefit, it is the duty of the public to enforce their performance and prescribe the penalties to be incurred by their non-performance.

There are many cases in which private actions have been sustained against proper aggregate corporations, such as bridge companies authorized to charge tolls; and in the *New England* states such actions have not unfrequently been maintained against towns for damages resulting from their failure to keep roads and bridges in repair. But these last mentioned cases were founded on local statutes giving the right of action. We have not been referred to any case, nor have we been able to find any, which is in point as an authority to sustain the right to a private action, under our statutes upon the subject, against an overseer of roads, for damages resulting from the neglect of his duties. We are, therefore, of opinion that such an action will not lie.

*Per Curiam.*—The judgment is reversed with costs. Cause remanded, with instructions to the Circuit Court to render judgment for the defendant.

*J. T. Brown* and *E. Dumont*, for the appellant.

*D. S. Major*, for the appellee.

---

KROHN *v.* TEMPLIN.—In Error.

*KROHN* had obtained a judgment before a justice of the peace against *Templin*. Afterwards, he, *Krohn*, filed

an affidavit with the justice in order to have a *capias ad* <span style="float:right">May Term, 1850.</span>
*satisfaciendum* issued on the judgment.

The justice, thereupon, issued a summons requiring
*Templin* to appear and show cause why a *capias ad satis-faciendum* should not issue as applied for by *Krohn*.

THE COMMON
COUNCIL OF
INDIANAPOLIS
v.
McCLURE.

The summons was dated on the 15th of *June*, 1849, and made returnable on the 25th of the same month.

*J. L. Ketcham* and *A. J. Stephens*, for the plaintiff.

*O. H. Smith*, for the defendant.