PETER HOVER, Respondent, *v.* WILLIAM H. BARKHOOF, WIL-
LIAM NEWKIRK and DAVID PETTINGILL, Commissioners of
Highways, etc., Appellants.

It is the duty of commissioners of highways to repair defective highways
or bridges, after notice of their condition, with reasonable and ordinary
care and diligence, if they have sufficient funds in their hands, or author-
ity to procure such funds; and neglect of this duty renders them liable
in a civil action to any person specially injured thereby.

Actual notice of the defective condition of a highway is not necessary,
where the circumstances are such that ignorance on the part of the com-
missioners is, in itself, negligence.

The issue being the fact of negligence, the motives or good faith of the
commissioners are entirely immaterial.

The principle should be regarded as settled in this State that public officers,
whose duties are not judicial, are answerable in damages to any one
specially injured by their careless and negligent performance of, or omis-
sion to perform, the duties of their office.

APPEAL from an order of the General Term of the Supreme
Court, in the fourth district, affirming a judgment entered
upon a verdict for the plaintiff.

This action is for the recovery of damages sustained by the
plaintiff, by the falling of a bridge over a stream in the
town of Florida, in the county of Montgomery, which was
alleged to be in an unsafe condition through the neglect of
the defendants, who were commissioners of highways of that
town, whereby the horses, wagon and harness of the plaintiff
were injured. The highway crossed the creek by means of the
bridge, which was of about forty-six feet span, and elevated
about eleven feet above the bed of the creek. The stringers
extended across the creek, resting on walls or abutments at
each end. The bridge had been constructed about fifteen
years, and the stringers, which were of hemlock, had become
rotten at the center, so as very much to impair their strength
and safety. The bolsters and floor timbers were also very
much decayed. Two of the commissioners, Barkhoof and
Newkirk, had been notified of the unsafe condition of the
bridge some weeks before the accident, and they had exam-

HAND — VOL. V.     15

ined it, and made some temporary repairs, and decided to let it remain till the following spring and then rebuild it. These commissioners also notified their co-commissioner that the bridge was out of repair, and had been complained of before the accident occurred. It had been found necessary to sustain the bridge with supports under the beams, in order to cross with heavy loads, a few weeks before the accident, and the defendant, Barkhoof, was present and saw this done. The expense of rebuilding it would have been about $150. The highway had been established and in use by the public, and there had been a bridge at this point more than thirty years. The plaintiff's son attempted to cross the bridge with a span of horses and loaded wagon, belonging to the plaintiff, on the 20th of August, 1863, when the stringers gave way and precipitated the team, loaded wagon and the driver to the bottom of the creek, seriously injuring the horses and breaking the wagon, causing at least $200 damages.

Pettingill had not visited the bridge, and knew of its unsafe condition only, as it had been communicated to him by his co-commissioners.

By a special statute applicable to Montgomery county, passed in 1853, commissioners of highways were authorized to borrow money to repair bridges without the authorization of the town.

When the plaintiff rested his case, the defendants moved to dismiss the complaint, claiming that no negligence had been shown on their part; that it had not been shown that the commissioners had any funds with which they could repair or rebuild, and also that the defendants were not personally liable. The motion was denied by the court and the defendants excepted.

The defendant, Pettingill, also renewed the motion on his own behalf separately at the close of the evidence for the defence, on the same grounds, and also for the further reason that there was no evidence that he knew that the bridge was out of repair or in an unsafe condition. This motion was also denied, and the defendant, Pettingill, excepted.

The jury found for the plaintiff $200 damages.   On appeal to the General Term the judgment entered on this verdict was affirmed, and the defendants have appealed therefrom to the Court of Appeals.

*George Smith* for the appellants, on the question of negligence, cited *Chase* v. *N. Y. C. R. R.* (24 Barb., 273); *Terry* v. *N. Y. C. R. R.* (32 Barb., 574); *Starr* v. *Peck* (1 Hill, 272); Brooms Leg. Max., 203; *Babcock* v. *Mont. Ins. Co.* (4 Comst., 329); *Mather* v. *Crawford* (36 Barb., 568).   That the motive or good faith of the commissioners was material, he cited *Seamen* v. *Patten* (2 Cai., 312); *Jenkins* v. *Waldron* (11 John., 114); *Vanderheyden* v. *Young* (id., 150); *Seymour* v. *Wilson* (14 N. Y., 567–9).   The fact that there is no precedent for such a recovery should be conclusive against the plaintiff. (*Costigan* v. *M. & H. R. R.*, 2 Den., 613; *The Duke* v. *Clark*, 8 Taunt., 602; KENT, Ch., in *Bartlett* v. *Crozier*, 17 John., 451.)   Such officers are in no event liable to a private action for mere neglect to repair.  (*Garlinghouse* v. *Jacobs*, 29 N. Y., 297; *Bartlett* v. *Crozier, supra;* *West* v. *Trustees of Brockport*, 16 N. Y., 161; *Hickox* v. *Trustees of Plattsburgh*, 16 id., 161.)   The whole question is one of good faith and judgment. (*Smith* v. *Wright*, 27 Barb., 621; *People* v. *Coms. of Seward*, id., 97; *Hill* v. *Supervisors of Liv. Co.*, 12 N. Y., 54; *Bartlett* v. *Crozier, supra,* and cases there cited.)

*Samuel Hand* for the respondent, cited *Robinson* v. *Chamberlain* (34 N. Y., 389, 390); *Hicks* v. *Dorn* (3 Hand, 47); *Fulton Fire Insurance* v. *Baldwin* (37 N. Y., 648); *Adsit* v. *Brady* (4 Hill, 630); *Smith* v. *Wright* (27 Barb., 621, S. C., 24 Barb., 170); *Clark* v. *Miller* (47 Barb., 38); *Mayor* v. *Furze* (3 Hill, 612); *Wilson* v. *Mayor* (1 Den., 595); *Wendell* v. *Mayor of Troy* (39 Barb., 335, aff'd. 4 Keyes, 261); *Rochester Lead Co.* v. *Rochester* (3 Comst., 469); *Hudson* v. *Mayor* (5 Seld., 163).

LEONARD, C. It was the duty of the defendants, by statute, to keep the highways and bridges of their town in repair, while they were in office. (1 R. S., 501, § 1.) A statute, passed in 1853, authorized them to borrow money on the credit of the town to the extent of $1,000, in any year for repairing bridges. (S. L. 1853, chap. 609, p. 1140.) And this duty of repairing is expressly enjoined by the second section, in case any bridge becomes unsafe. There was no exception to the charge of the judge, and it must be assumed that the jury have found against the defendants, correctly, on the question of the existence of negligence.

The only other material question in the case relates to the liability of the defendants, by reason of their office, for the injury caused by their neglect. The appellants rely on the case of *Garlinghouse* v. *Jacobs* (29 N. Y. R., 297), and the cases there cited. That case was quite similar, in the main facts, to the present. It is distinguishable in one important feature, viz., the defendant had no funds, and no authority to obtain them, for the purpose of repairing bridges.

The Court of Appeals reviewed that case, in *Robinson* v. *Chamberlain* (34 N. Y. R., 389), and placed the prior decision of *Garlinghouse* v. *Jacobs* on the true ground, that the defendants were without funds, or the power to obtain them; and denied the doctrine there attempted to be established, that commissioners of highways were not liable to a private action for injuries caused by their neglect or omission to keep the bridges of their town in repair. The leading cases of this State, and of England, are well reviewed, and it was held, on careful consideration, that one who assumes the duties, and is invested with the powers of a public officer, is liable to an individual who sustains special damage by a neglect properly to perform such duties.

The case of *Adsit* v. *Brady* (4 Hill, 630), which distinctly enunciates the rule followed in 34 N. Y., 389, occasionally doubted, as in *West* v. *The Village of Brockport* (16 N. Y., 168), was fully approved and its authority vindicated.

I am entirely satisfied with the correctness of the rule to be drawn from *Robinson* v. *Chamberlain, supra.* Every sentiment of justice, and principle of public policy, commend it.

The defendants, in the case under consideration, were clothed with the power to obtain the means for rebuilding, but they refused to exercise it, and resolved to postpone the performance of their official duty till the following spring. I think they are liable, on the authority of *Robinson* v. *Chamberlain*, and *Adsit* v. *Brady, supra*, for the damages sustained by the plaintiff, from their neglect of official duty. It is not useful to repeat here what has been so well said in those cases.

During the trial one of the defendants who had examined the bridge and contracted for repairs, being a witness for the defence, was asked, on their behalf, if he believed the defendants had made use of all the means necessary to the safety of the bridge ? The question was excluded, and the defendants excepted.

Their belief in the sufficiency of the means used, or of the structure, was of no consequence or materiality. The alleged neglect was a fact to be proven. The belief of the defendants as to the non-existence of the fact, did not tend to show how, in truth, the fact was or might be. The belief of the defendants, while it proved nothing as to the fact, might tend to mislead the mind of the jury. If the inquiry was for the purpose of proving that the defendants were not acting in bad faith or with malice, it was equally immaterial; the question was negligence or no negligence, as a fact. Mistaken belief in the soundness of the timbers, or the sufficiency of the repairs, did not tend to any conclusion as to the fact. The case of *Seymour* v. *Wilson* (14 N. Y., 567) has no application. The rule there adopted should be confined to the class of cases in which it was introduced.

There appears to be no error, and the judgment should be affirmed with costs.

EARL, C. By statute (1 R. S., 501, § 1), the duty is imposed upon commissioners of highways " to cause the highways and bridges which are or may be erected over streams intersecting highways to be kept in repair."

Section 2 of chapter 609, of the Laws of 1853 provides that whenever any bridge, upon any highway in any town of the county of Montgomery, shall from any cause become unsafe or impassable, it shall be the duty of the commissioners of highways of said town to provide for the construction or repairing thereof, upon the credit of the town when they have not cash funds for the purpose in hand; but such credit is not in any one year to exceed the sum of $1,000.

There was no claim upon the trial that the defendants could not have caused this bridge to be repaired upon the credit of the town under this statute, and there was no proof that they did not have on hand cash funds sufficient to cause it to be done.

If the defendants had shown that they did not have funds to repair the bridge, and that they could not have caused it to be repaired upon credit under the statute, then they would have had a clear ground of defence. But in the absence of proof to that effect, they cannot avail themselves of that ground of defence. Under the facts of this case, and the principle decided in *Adsit* v. *Brady* (4 Hill, 630), they must be treated as if they had the requisite funds in hand or under their control.

There was evidence tending to show that the bridge was out of repair and unsafe, and that all the defendants had notice of it, and that they were guilty of negligence in not causing the bridge to be repaired; and hence these facts must be assumed as true, and cannot be disputed here.

Under the Revised Statutes, and the statute of 1853 (provided these defendants had the requisite funds, or could do it upon the credit of the town), it was their absolute and imperative duty to repair this bridge. Upon that point, they had no discretion to exercise, and their duty was as absolute

and imperative as that of any other public officer, upon whom the law imposes a precise and plain duty.

The defendants, therefore, cannot succeed in their defence, unless they can establish the doctrine found in the *dicta* of some learned judges that a public officer, charged with public duties, and receiving his compensation from the public, is liable only to indictment for *non-feasance* in the discharge of his official duties, and that he is not liable in a civil action to individuals sustaining special damage from such *non-feasance.* I cannot assent to this doctrine. It is neither founded on principle, nor sanctioned by public policy. I will call brief attention to a few cases relied upon to establish it.

In *Bartlett* v. *Crosier* (17 John., 440), the action was against the defendant, an overseer of highways, to recover damages which the plaintiff sustained in consequence of the neglect of the defendant to keep a bridge in repair. The case in no way involved the liability of commissioners of highways, and all the chancellor said as to their liability in his opinion was *obiter.* He held, that an overseer of highways was a mere subordinate agent of the commissioners, and that the latter were responsible to the public for the repair of bridges, and he thus reached a conclusion necessarily fatal to the plaintiff's right to recover. He, however, discussed the liability of commissioners of highways for neglect to repair bridges, and held that they are not liable for such neglect to an individual sustaining damage in consequence thereof, substantially upon these grounds: (1.) Because the duty to repair is not absolute and imperative, is dependent upon a train of circumstances, is indefinite and varied, and regulated by circumstances. (2.) Because they are not supplied by law with the funds, nor with the means to procure them. (3.) Because there was no precedent in this State, or England, to sustain a recovery in such an action.

There may be cases where the first ground of defence stated by the chancellor would prevail. If it should appear, that the commissioners had in hand some money, and there were many roads and bridges to be repaired, then they would

have a discretion as to where the money should be expended, and their duty to repair any particular bridge might, so far, depend upon circumstances, and be so uncertain and indefinite, that they could not in any way be made liable for neglect to repair it. But this ground could not be available in a case where the commissioners had the requisite funds, and neglected or refused to use them in repairing the bridge. In such a case, their duty would be precise and certain, and the chancellor, and all the authorities, concede that they could be punished by indictment. And so long as their duty is so clear and certain, that they can be punished criminally for its neglect, I cannot conceive of any reason why they may not be liable *civilly*. In this case, the commissioners had the requisite funds, or credit, under the statute, and it does not appear that they had any other use for them.

The second ground, as I have just stated, does not exist in this case, as the commissioners had the pecuniary means in possession or under their control. The other ground should have some weight, but should never of itself in any case be controlling. It may be true that no such action has ever been sustained in this State or England, and neither has it ever been held that such an action cannot be sustained in a case where the commissioners have the requisite funds, and are, as in this case, under a plain duty to use them to make the repairs. Probably the cases have been few where all the facts existed which would enable a party sustaining damage, without his fault, from a defective bridge, to maintain an action against commissioners of highways to recover his damages. From the nature of the duties devolved upon them and the limited manner in which they are ordinarily supplied with funds, it would not often occur that it could be shown that a bridge was culpably out of repair; that they knew it, and, having the requisite funds applicable, neglected to repair it. Hence, if there are well settled principles of law that will sustain such an action, the fact that there is no precedent for it should not have much weight. It has not for centuries been the rule in common-law courts to defeat a

party because there was no precedent authorizing his action. The action on the case was brought into use for the express purpose of authorizing actions where there was no precedent to sanction them.

The liability of commissioners of highways came under discussion in the case of *West* v. *The Trustees of the Village of Brockport* (16 N. Y., 161). Judge Selden, in a learned opinion, holds the law to be as stated by the learned chancellor in the case of *Bartlett* v. *Crozier*. But all he says upon the subject is also *obiter*. He concludes that city, village, and other corporations charged with certain public duties, are responsible to individuals for neglect of duty causing damages; but he bases this responsibility upon a contract with the government, implied by the acceptance of their charters, that they will discharge the duties imposed by such charters; and such contract, he holds, is deemed to enure to the benefit of every individual interested in the discharge of the duties. But he claims that this principle of liability does not apply to public officers, who receive their compensation for the discharge of their duties from the public, and that such officers are liable only to the public for neglect of their official duties, and can be punished for such neglect only by indictment. I can see no sound reason for this distinction. Public officers voluntarily accept their offices and take an oath that they will faithfully discharge their duties. They enter into an implied undertaking or contract that they will perform the duties of their offices for the compensation to be paid. Why does not this contract, as in the other case, inure to the benefit of every individual interested in the performance of the official duties? The learned judge admits that the case of *Adsit* v. *Brady* (4 Hill, 630) is an authority against the views expressed by him as to the responsibility of public officers.

In *Garlinghouse* v. *Jacobs* (29 N. Y., 297), the action was against commissioners of highways for damages sustained by the plaintiff, from the falling of a bridge. The plaintiff was defeated, because it appeared that the defendants did not have the requisite funds to repair the bridge; and the precise

point, and the only one decided, was, that no duty attaches
to commissioners of highways to repair roads and bridges
until funds are provided for the purpose by the public.   But
Judge WRIGHT, writing one of the opinions of the court,
goes further, and holds, following the opinions of Chancellor
KENT and Judge SELDEN, above cited, that an action for dam-
ages for an omission of duty cannot, under any circumstances,
be maintained against commissioners of highways.   All he
says upon this subject, however, is merely *obiter*, although
one, and perhaps two, of the other judges concurred with
him.   He falls into the manifest inconsistency of holding
that commissioners of highways cannot be made liable in a
civil action for neglect of their duties, because their duties
are not sufficiently certain, stable or absolute, while he holds
that they may for such neglect be indicted and punished
criminally.   He holds that commissioners of highways, and
other public officers who receive their compensation from the
public, owe no duty to individuals, but owe duty only to the
public at large.   Is this position tenable ?   The public is com-
posed of individuals, and every individual who travels is
interested in the discharge of the duties of these officers.
The public, as distinguished from individuals, has no interest
in them.   They receive their compensation from the town, a
municipal corporation, which acts for and represents the indi-
viduals of the public.   The compensation is paid for, and on
behalf of such individuals ; and thus these public officers are
brought into relations with every individual who has an inte-
rest in the discharge of their duties, just as much as if indi-
viduals directly paid the compensation for their services.
Judge WRIGHT says : " It will not do to say they are thus
liable when they happen accidentally to have funds at com-
mand to make repairs and omit to make them, and are not
liable when without them.   This would be the establishment
of an impracticable and fluctuating rule of liability, depend-
ing on circumstances not within their control."   And yet,
under this " impracticable and fluctuating rule," he holds
they are liable criminally ; and why should they not be

civilly? But the rule is neither impracticable nor fluctuating, nor uncertain in its application. If the commissioners have no funds they are guilty of no negligence, and owe no duty. If they have funds, the duty and guilt of negligence attach, and they become liable. The rule is plain, practicable, easy of application, and the duty is imperative and absolute.

I have thus noticed the cases mainly relied upon on the part of the defendants to defeat this action ; and it will be seen that while they contain *dicta* of very learned judges, they are by no means conclusive authorities upon the point under consideration.

I will now call attention to a few cases cited on the part of the plaintiff to uphold the judgment in this action ; and the first and most pointed one is the case of *Adsit* v. *Brady* (4 Hill, 630). That was an action against the defendant, a canal superintendent, to recover damages sustained by the plaintiff from collision with a sunken boat which it was alleged the defendant had negligently permitted to remain in the canal, and it was held that the plaintiff could recover. That was an action for *non-feasance* against a public officer receiving his compensation from the public and not from the individuals damaged, and in principle is precisely in point in favor of the plaintiff in this case. Judge BRONSON, writing the opinion lays down the broad proposition that when an individual sustains an injury by the *mis-feasance* or *non-feasance* of a public officer who acts or omits to act contrary to his duty, the law gives redress to the injured party by action adapted to the nature of the case. While that case has been criticised in several cases, it has never been overruled. It was approved by Judge MASON, in *Hutson* v. *The Mayor*, etc. (9 N. Y., 169), by Judges PECKHAM and HUNT, in *Robinson* v. *Chamberlain* (34 N. Y., 389), and in various other cases that have fallen under my observation. It has stood, as the law, for twenty seven-years ; and unless it can be clearly shown to be unsound in principle, it should be recognized as authority. It laid down no new principle ; for nearly fifty years ago, Chief Justice BEST, in *Henly* v. *The Mayor of*

*Lyme* (5 Bing., 91), said: "I take it to be perfectly clear, that if a public officer abuses his office, either by an act of omission or commission, and the consequence of that is an injury to an individual, an action may be maintained against such public officer. The instances are so numerous that it would be a waste of time to refer to them." And still earlier Chief Justice SPENCER, in *Bartlett* v. *Crosier* (15 John., 250), said: "It is a general principle of law, that whenever an individual has sustained an injury by the *non-feasance* or *misfeasance* of an officer who acts or omits to act contrary to his duty, the law affords redress by an action on the case adapted to the injury." And these eminent judges were preceded by Chief Justice HOLT, who more than a century earlier laid down the rule in *Lane* v. *Cotten* (1 Salk., 17), that in every case where an officer is intrusted by the common-law or by statute, an action lies against him for a neglect of the duty of his office.

The case of *Robinson* v. *Chamberlain* was an action against a canal repair contractor, to recover damages which the plaintiff had sustained, because he had not discharged the duty imposed upon him by his contract, by permitting lock-gates to be out of repair. It was held, that, while the defendant had entered into contract with the State only, and received his compensation from the State, he was a *quasi* public officer, owing duties to the public, and, as such, was liable to every individual who sustained damage by his neglect of his duties. Judge PECKHAM, likening the canals to a public highway, says: "A failure to keep a public highway in repair by those who have assumed that duty from the State, so that it is unsafe to travel over, is a public nuisance, making the party bound to repair liable to indictment for the nuisance, and to an action at the suit of any one who has sustained special damage." This case was followed in *Fulton Fire Insurance Company* v. *Baldwin* (37 N. Y., 648). And in harmony with these cases, in Sherman and Redfield on Neg., 198, the authors, adverting to the distinction sought by some judges to be made between the liability of public officers, who receive a compensation

from the public, and those who receive a compensation from individuals, deny that there is, in principle, any such distinc tion where public officers are charged with personal miscon- duct or negligence, and say: " A sheriff, who is paid for particular services by individuals, is no less a public officer than a postmaster who receives a salary from the government. The contract of each, usually confirmed by an oath, is with the government, to faithfully discharge the duties of his office. An individual who deposits a letter for transmission with a postmaster has as much right to insist upon the latter perform- ing his duty in respect to his letter, as he has to insist that a sheriff, to whom he directs a writ, shall faithfully execute and return it. The duty of each is under the law : the sheriff's on certain prescribed terms ; the postmaster's absolutely and unconditionally. It is now settled in New York, that, so far as concerns the question of remedy, there is no distinction between these two classes of public officers." They further indorse the rule laid down by Judge BRONSON, in *Adsit* v. *Brady,* that a public officer, not judicial, who, in his office, acts carelessly and negligently, or who, contrary to his duty, omits to act, or otherwise abuses his office, is answerable in damages to any one who is specially injured thereby.

These authorities ought to be regarded as settling the rule laid down in *Adsit* v. *Brady,* and as authoritatively estab- lishing the principle contended for by the plaintiff in this action.

I hold, therefore, that commissioners of highways, having the requisite funds in hand, or under their control, are bound to repair bridges which are out of repair, they having notice of their condition ; and they are bound to repair them with reasonable and ordinary care and diligence, and, if they omit this duty, they are liable to individuals who sustain special damage from such neglect. I do not mean to limit the rule to cases where they have actual notice of the condition of the bridges, because there may be cases where their ignorance of their condition would be culpable. And public policy favors this rule. Defective bridges are dangerous, and travelers

generally have no means of knowing whether they are safe or not. They have to rely upon the fidelity and vigilance of the highway commissioners, who are the only persons whose duty it is to see that the bridges are in repair. The burden imposed upon these officers by this rule is not too great. All it requires of them is, that they shall, with reasonable care and fidelity, discharge the duties which they have solemnly sworn to perform.

The judgment should be affirmed, with costs.

All concur for affirmance.

Judgment affirmed, with costs.