# PRACTICE REPORTS.

## SUPREME COURT.

JAMES LAMENT, Survivor, &c., Respondents, agt. ISAAC T.
HAIGHT and others, &c., Appellants.

Where a *highway commissioner* has received notice of the unsafe character
of a *bridge* in his town, a year before an alleged injury has been sustained by
reason of its defects, and has negligently omitted to cause it to be repaired, such
commissioner is guilty of a wrong rendering him liable for all its consequences to
those who might be injured by it.

It is the commissioner's wrong exclusively, and not that of his successors in office,
and he may be sued for it as a mere individual, relying upon his official obliga-
tion to establish the duty he has violated.

Such a case is, therefore, not one where the action could be *continued against his
successor in office.*

If the requisite notice has been given the commissioner, and he has funds, or could
by reasonable official diligence have procured them, or without them could have
caused the bridge to be repaired on the credit of the town, he is bound to
have the repairs made, and a failure to do so, resulting in an injury to
another, will render him liable to an action.

But the commissioner is not bound to make use of his own personal exertions to
repair the bridge himself, or so far guard it by means of admonitions to the
persons using it, as would inform them of its condition in order to protect
himself against liabilaity for injuries which might be otherwise occasioned.

*General term, third department.*
*September,* 1872.
*Before* DANIELS, PARKER *and* PLATT POTTER, *JJ.*

THIS is an appeal from a judgment recovered upon a
verdict and from an order denying a motion for a new trial,
made upon the minutes of the justice holding the circuit.

GAUL & ESSELSTYN *for Appellants.*
BEALE & BENTON and ANDREWS *for Respondent.*

DANIELS, J.   This action was brought originally against
Bernice B. Smith, as commissioner of highways, of the
town of New Lebanon, and it has since been continued
against his successors in office.   The demand made by the
plaintiff was for damages occasioned to a horse by reason
of an injury created by passing his leg down a hole in a
defective bridge, on one of the public highways of the
town.   It was claimed that the highway commissioner had
received notice of the unsafe character of the bridge, the
year before the injury was sustained, and that he had
negligently omitted to cause it to be repaired.

If such was the fact, as the evidence tended to prove it
was, then the delinquent commissioner was guilty of a
wrong, rendering him liable for all its consequences to those
who might be injured by means of it.   It was his wrong
exclusively, and not that of his successors in office, and he
might have been sued for it as a mere individual, relying
upon his official obligation to establish the duty he had
violated.   It was not a case, therefore, where the action
could be continued against his successor in office, for that
right is limited to those cases when a contract has been
entered into, or a liability may have been incurred, in behalf
of the town, within the scope of the officer's authority.   (3
*R. S. 5th ed.,* 775, § 111.)

If the liability relied upon, existed at all, it was not
incurred on behalf of the town by the commissioner,
neither was it within the scope of his authority, for no
authority was any where conferred upon him to involve the
town in liability, on account, of his negligent omission of
duty.

Such liability would invert the established principle of
law, requiring a subordinate wrong-doer to indemnify his
superior against the consequences of his wrong.   The case

was not one, therefore, which could be continued against his successors in office, and in that manner made a charge upon the town whose officer he was. It is only where the contract has been made, or the liability has been incurred within the scope of the officer's authority, that such a consequence was designed to follow. And in those cases it would be entirely just and proper.

But to apply to the protection of a public officer for the purpose of indemnifying him against the result of the violation of a plain statutory duty, would be directly injurious to all public and private interests, dependent upon the faithful discharge of his official obligations, and it would operate as a direct encouragement to official delinquency since it would protect the negligent wrong-doer from all the legal consequences of his wrong. That, certainly, could not have been designed by the authority enacting the law. The policy of the law, on the contrary, is to require, as well as induce, public officers for their own protection, faithfully to discharge the duties and obligations imposed upon them, and experience demonstrates the necessity of rendering this policy as stringent as circumstances may indicate to be practicable.

The evidence given upon the trial tended very strongly to show that the commissioner had notice of the defective condition of the bridge in the year 1863, while the injury complained of did not occur until June, 1864. If the jury believed that he had notice at that time, then by availing himself of the power given him by statute he could have secured the funds required to repair the bridge, and had the repairs made before the time when the injury happened. For the statute made it his imperative duty to deliver to the supervisor of his town, a statement of the improvements necessary to be made on the roads and bridges of the town, together with the probable expense thereof, and that, it required the Supervisor to lay before the Board of Supervisors at their next meeting, and the Board was then to

cause the amount to be assessed upon and collected in the town, (3d R. S. 5th ed. 382, § 4.) If the amount prescribed by this section would in his opinion prove insufficient he was empowered to apply in open town meeting for a vote increasing its amount. But no reason exists for supposing that the amount, within the absolute power of the commissioner, would have proved insufficient, for that gives him the right to require one hundred dollars more than the board provided should be raised, which would have been more than sufficient to repair this bridge.

The commissioner had complete authority for procuring all the money required to put the bridge in a safe and proper condition, and if he had the notice, which the evidence tended to establish, in time to enable him to bring the subject before the supervisors, he violated his duty in omitting to do so, and he cannot rely upon that violation as a shield to protect himself from liability in this case. If he did not have the means to make the repairs, assuming he had the previous notice, it was his own fault, of which he cannot take the advantage (Robinson agt. Chamberlain, 34 N. Y., 389, 395 ; Hover agt. Barkhoof, 44 N. Y., 113).

In the last case the defendants were held liable on the exclusive ground that they had the power under a special act of the legislature to borrow the money to repair the bridge, and omitted to exercise it.

This bridge had become damaged by use, and with the consent of the town auditors it might have been repaired upon the credit of the town ( 2d R. S.; 5th Ed. 44, § 179, 180.) and it was the commissioner's duty to have endeavored to have the repairs made under that authority if for any reason the omission of the duty imposed by the other provision could have been excused. For although the language of the section last referred to is simply permissive, as it related to a duty which the public interests and the safety of its members required to be performed, it was in legal effect peremptory in its nature. (Hutson agt. Mayor, &c., 5 Seld.

163.)    It is no answer to the omission to perform this duty, that the town auditors might  have withheld  their consent, for that would have been  a violation of their official duties if the safety of the public  required the  bridge to  be  repaired, and that, it is not  to  be  presumed they  would  have  been guilty of.   The obligation was in plain terms  imposed upon the commissioner to cause the bridges over streams intersecting highways  to be  kept in repair,  and it was  his duty to avail himself of the means the  law placed at his command to secure that end (2d. R. S., 5th ed., 381, § 1, sub. 4) and if by neglecting to do so, the plaintiff's property was injured, the commissioner ought to be held liable for the consequences.

If the notice was  given him, and he  had funds,  or  could by reasonable official diligence have procured them, or, without them, could have caused the bridge to be repaired on the credit of the town, he was bound to have  the repairs made, and a failure to do  so,  resulting  in an  injury to another; would render  him liable  to an  action.

But this case  was not  submitted  to the jury  under that principle.   The court went further, and held that the  commissioner would be liable if the bridge  might  have been repaired by a little personal  labor and  superintendence on the part of the officer, even though he had no funds, or the means of procuring them for the purpose of  causing that to be done.

In effect, that he was bound  to make use of his  own personal exertions to  repair the bridge himself,  or so  far guard it by means of admonitions to the persons using it as  would inform them of  its  condition  in order to  protect  himself against liability for injuries which  might be otherwise occasioned.   This was  the substance of the  proposition on this part of the case as it was submitted to the jury.   No authority can be found so far  extending the  liability of the commissioner.   And  as his duties are prescribed by the statutes of the state, and this is  not found among them, this portion of the charge gave the jury an erroneous view of the law applicable to the case.   For this  reason, as well as the

substitution of the defaulting commissioner's successors in office, a new trial should be ordered. The judgment and the order denying a new trial should be set aside, and a new trial ordered after vacating the orders substituting the successors in office of the commissioner originally made the defendant, with costs to abide the event.