SAMUEL BRYANT, Administrator, etc., Respondent, *v.* TOWN OF RANDOLPH, Appellant.

*Supreme Court, Fifth Department, General Term, June 22, 1889.*

1. *Questions of fact. Contributory negligence.*—The question of contributory negligence is for the jury, where the evidence shows that the accident occurred, while the deceased was driving with a heavy load down a steep descent, and the testimony is conflicting as to whether his wagon had a brake, and whether he was in a position to use it.

2. *Same. Highway.*—That the defective highway was on land belonging to a railroad company, is a matter for the consideration of the jury.

3. *Same.*—The fact that the roadway had remained as constructed for more than 27 years, was not a defense necessarily, but was a circumstance which the jury should have been allowed to take into consideration in determining the question, whether the highway commissioner was, at the time, personally chargeable with negligence for which the town must respond.

4. *Pleadings. Answer.*—Where plaintiff unnecessarily alleges matter, the negative of which will constitute an affirmative defense, the defendant need not, in addition to a general denial, plead affirmatively the fact, to enable him to give evidence thereof.

5. *Town. Liability.*—It seems that a town, when defendant and liable for the negligence of the highway commissioner, will not be permitted to show, as a defense, a lack of funds for making repairs, or inability to raise them.

Appeal from a judgment entered upon a verdict, and also from an order denying a motion for a new trial upon a case and exceptions.

*William H. Henderson,* for appellant.

*T. W. Stevens,* for respondent.

MACOMBER, J.—The plaintiff, as administrator of the effects of his deceased son, George A. Bryant, brings this action to recover damages for the death of the decedent by reason of alleged negligence of the commissioner of highways of the defendant.

At the time of receiving the injuries, which resulted in the death of George A. Bryant, he was traveling upon the highway in the town of Randolph, near a point where the highway is crossed by the New York, Pennsylvania and Ohio railroad, but within the lines of the railway lands.

The highway had existed at this point for many years prior to the construction of the railroad. At the time of the building of the railroad, namely, in the year 1860, the railroad company undertook to carry the highway across its track at grade, but in doing so, it elevated the highway about twelve feet above its original and natural level. This caused a sharp incline in approaching the railroad from the south, and a correspondingly sharp decline in descending from the railroad tracks northerly. The decedent was riding upon a load of bark, weighing two tons and three hundred pounds. The traveled route which vehicles were required to take coming from the south had a sharp bend or curve to the right while approaching the track, and then an equally sharp turn to the left in descending, and in passing on to the village of East Randolph. While descending the grade on the north side of the railroad tracks, and while yet upon the railroad lands, at a point about thirty or forty feet north of the tracks, the load of bark was overturned to the left, and the driver was crushed.

The grade of the highway on the north side of the railroad track was eighteen feet to the hundred.

The maps introduced in evidence, together with the testimony, show not only the curve to the right in approaching the track from the south already mentioned, but also the reverse curve to the left, after attaining to the summit of the grade, and a triangular space said to be filled in with loose stone, which, it was claimed by the counsel for the respondent, made it impracticable for a team, with a heavy load, to approach the railroad crossing at such an angle as would enable the driver to make an easy and safe descent to the north.

Evidence was given to the effect that in the spring of the year 1886, eighteen months before the injuries were received by the plaintiff's intestate, the commissioner of highways had endeavored to remedy certain inequalities in parts of the highway already mentioned, by placing gravel in the places that had been dished out by use. It was claimed by the counsel for the respondent, also, that these deposits of gravel, not being evenly distributed, contributed somewhat to the danger of the situation which confronted the deceased on this occasion.

An attentive perusal of the testimony seems to indicate that the highway commissioner could not have been properly held chargeable with negligence in respect to the triangular spaces, and in respect to the deposits of gravel which he had placed along this highway in the year 1886. The testimony is quite uniform, that these triangular spaces had existed in that condition substantially unchanged from the time that the railway took the highway over its tracks at grade. The evidence in regard to impairing the safety of the highway by reason of the deposits of gravel in the year 1886, is by no means satisfactory, and it is hardly possible that the jury could have intelligently based their verdict upon either of these supposed neglects of duty on the part of the highway commissioner.

It is substantially conceded, because not disputed in the evidence, that the highway was, at the time of the injuries complained of, substantially in the same condition as it had been for twenty-seven years and a half.  The location is dangerous, whether the traveler approaches from the north or from the south.  It is extremely hazardous for heavily loaded wagons on account of the precipitous grade from the railway tracks.  The curves in which the traveler is required to drive materially increase the hazards of the traveler.

Evidence was adduced in behalf of the respondent that the deceased crossed the railway tracks and entered upon the descent of the highway upon the north, while sitting about midway of his load on the right hand side of it. Evidence was given that brakes were required to be used in managing loads of such weight.  There is something more than a mere suggestion of testimony, that the wagon that carried the deceased was not at the time furnished with a brake, but there is testimony to the contrary, and to the effect, that though the brake had at one time been broken, it had been repaired before the journey in question was made.  The testimony also shows that a brake could be manipulated by means of a rope by the driver while sitting in the place where some of the witnesses said the deceased was ; one or more witnesses testified that as the driver descended the grade he was not sitting on the right hand side of the load, but was standing up in a position where, of course, he could not work the brake.

Under this condition of the evidence, it became a question of fact for the jury to say whether or not the deceased exercised proper care in descending the highway northward from the railway tracks.  Though the testimony on this subject shows the case to be a close one, yet it presented manifestly a question which should have been, as it was in fact, fully submitted to the jury.

Eliminating the suggestion contained in the evidence, that

the town is liable on account of the failure of the commissioner of highways to have the triangle, so-called, so graded and leveled as to be passable by wagons, and the fact, as some of the witnesses testified, that loose hummocks of gravel had been allowed to remain upon the highway since the repairs of 1886, the charge of negligence against the commissioner of highways is substantially, that he failed to erect barriers along or near the traveled part of the highway so as to prevent accidents of this kind.

The learned judge, at the trial, in substance, charged the jury that the commissioner of highways was guilty of negligence if the highway was, at the time of the accident, unsafe for public travel; and also that it was no defense to the town to show that the highway had remained substantially in its present condition from the year 1860 to the time of the accident. This part of the charge was excepted to by the defendant's counsel. The judge said, " and neither is it a proper subject for you to consider, for the purpose of reaching a conclusion upon this branch of the case (as to whether Commissioner Lane was negligent or not) that this crossing has existed in this shape for thirty years. * * * If it has been for thirty years a bad highway, and by reason thereof this man was injured, the fact that it has existed a bad highway for that series of years is no answer to the plaintiff's claim in this case."

At the close of the charge, the counsel for the defendant asked the court to charge, that the fact that the road had been constructed and maintained in this same condition for nearly thirty years, is a circumstance in and of itself from which the jury may infer that it was properly constructed.

The court declined to change the charge upon that subject, to which counsel for the defendant excepted.

The charge, as it was delivered, and the request to charge, which was refused, present an interesting question. Had the defect in the highway, where the accident happened, been a break, or a hole, or a spot so manifestly dangerous

beyond the usual, natural or artificial dangers of the general situation of the highway, the charge, and the refusal to charge, as requested, would undoubtedly be correct. But the case in this aspect is unique. It is not a mere defective spot which seems to be the subject of complaint, and for which a verdict has been given against the town; it is rather for the generally dangerous crossing, which had been permitted to exist for twenty-seven and a half years. The ascent and the declivity were about eighty feet each in the line pursued by the deceased. The traveled part of the highway was nearly eighteen feet wide. Wagons had been accustomed to go within a distance of six inches to eighteen inches of the bank down which this load of bark was plunged. The spot where the wagon was overturned is not more dangerous to the public than any other spot of equal distance from the railroad track on either side of it. This whole region was dangerous, but not more dangerous at the time of the accident than it had been for the period above mentioned. The jury should have been allowed to have taken this circumstance into consideration in arriving at their verdict. The fact that the roadway had remained so constructed by the railroad company, unchanged for this number of years, was not a defense necessarily, but was a circumstance which the jury should have been allowed to take into consideration in determining the complicated question, whether Mr. Lane, the highway commissioner, was at the time personally chargeable with negligence for which the town must respond. Had the highway commissioner found a defective spot in this highway presenting something beyond the ordinary dangers of the whole established route across the railroad tracks, and had permitted it to remain to the injury of the traveler, a different question would, in my judgment, be presented. He found, when elected, the results of an enterprise which had existed through many administrations, substantially unchanged. Had the embankments been naturally and not artificially formed, and the highway had existed

thereon for this length of time, it would seem to be holding the rule up higher than it has ever been raised yet, to declare that the highway commissioner should be charged with a negligent omission to guard what, through public assent, had been safely left unguarded for nearly a generation. This is an error which should lead to a new trial.

The learned judge also charged that it made no difference in respect to the liability of a town whether the accident happened on the lands of the railroad company, as was the fact, or elsewhere, at a distance from the railroad lands. It is time that a municipal corporation which undertakes to maintain a highway across the lands of a railway company, though in no respect chargeable with the duty of the original construction, assumes a responsibility for an omission to furnish a safe highway. People *ex rel.* Markey *v.* City of Brooklyn, 65 N. Y. 349; Tierney *v.* City of Troy, 41 Hun, 120; 4 N. Y. State Rep. 15.

But when the difficult question of negligence or the omission of duty of a particular person enters into the case, the jury should be permitted to take into consideration every circumstance connected with the transaction which would tend to relieve him from responsibility.

It is further contended by the counsel for the appellant that the defendant should have been allowed to show that the commissioner of highways did not have funds with which to make the barricades to protect the public from peril. It is conceded by the counsel for the respondent that lack of funds and inability to raise them, is a defense to an action of this description. The proofs, however, do not come up to the point of establishing the fact that there were no funds in the hands of the highway commissioner with which to make the needful repairs. As the evidence stands in the record, the ruling of the judge was correct in this respect; for the evidence was adduced, not to the fact of possession of sufficient funds at the time of the accident, but rather to a period of a year and a half before that time. The rule,

however, so conceded by the plaintiff's counsel, that want of funds and inability to raise them may be a defense, was established when the action for personal injuries through defective highways was brought only against the highway commissioner himself personally, and not as it is now permitted to be brought under chapter 700 of Laws of 1881, against the town itself. Hover *v.* Barkhoof, 44 N. Y. 113.

It is extremely doubtful whether the town, being the defendant and being made liable for the negligence of the highway commissioner, could show, or if it could that the court would permit it to show, a lack of funds, or inability to raise them, for making repairs. But we do not now pass upon this point.

The question of pleading this matter in the answer is also presented. The complaint alleged possession of adequate funds by the highway commissioner. The answer under the general denial put this in issue. The plaintiff gave no proof of this allegation, and the evidence which the defendant attempted to adduce upon the question was ruled out, not, apparently, on the ground of being inadmissible, but rather upon the ground of being insufficient, in the respect already pointed out. The plaintiff could properly have put the defendant to an affirmative defense of the want of funds, had he seen fit to do so, by remaining silent upon the subject in the complaint; but, having alleged the actual possession of funds by the commissioner, it would seem that it was not necessary for the defendant, in addition to a general denial, to plead affirmatively that fact in order to enable him to give evidence thereon.

The judgment should be reversed and a new trial ordered, with costs to the appellant, to abide the event.

DWIGHT, J., concurs.