### STRONG v. DAY et al.

No. 8263—Opinion Filed Oct. 24, 1916.

(160 Pac. 722.)

**Bridges—Injuries from Negligence—Officers—Personal Liability.**

The individuals composing a board of county commissioners are personally liable to any person suffering damage thereby, and who is himself not guilty of contributory negligence, for their negligent failure to repair a county bridge under their care and supervision; there being sufficient public funds available for making such repairs.

(Syllabus by Burford, C.)

Error from District Court, Custer County; T. A. Edwards, Judge.

Action by S. J. Strong against G. W. Day and others. From a judgment sustaining a general demurrer to the petition, plaintiff appeals. Reversed with directions to overrule demurrer.

Geo. T. Webster, for plaintiff in error.

Geo. C. Darnell, for defendants in error.

Opinion by BURFORD, C. Plaintiff alleged that the individual defendants constituted the board of county commissioners of Custer county; that, as such, they were charged by law with the duty of repairing the public bridges in the county over 20 feet in length; that among such bridges was one constructed over Deer creek at a point particularly described, said bridge having been built by the county in 1910; that said bridge was upon an improved public road upon a section line laid out and improved by the county; that said bridge was being used as a county bridge on June 2, 1915; that on said day, while crossing the same with a loaded wagon, the plaintiff's work animals were killed by reason of the bridge falling down and precipitating them and their driver into the creek below. Many defects in the original construction of the bridge were set out, and it was further alleged that the beams and supports thereof had become rotten and decayed, and had been in such condition for more than 17 months prior to the accident. The petition then states:

"Which condition was unknown to plaintiff, but was well known to said defendants, as plaintiff verily believes and so charges, but if such fact were not known to them, their ignorance and want of knowledge relative to the rotten condition of said tie beams and struts was due to their wanton negligence and want of care in looking after and trying to ascertain the true condition of said bridge, and said plaintiff alleges that, if said defendant had given said bridges any attention, or had made the most casual examination of same with the end in view of ascertaining if the same was in good repair, they would have readily discovered that the same was in a dangerous condition and liable to collapse at any time, and this they wantonly and negligently failed to do. That the joints and ends of said beams where the struts entered against the shoulders became and were rotten and in a decayed and worthless condition, destroying the use and value of said bridge, and making it extremely dangerous to the traveling public, and liable to collapse at any time, and that the 8x8 beams extending over said piling at the ends thereof upon which

rested the tie beams became and were rotten and decayed and incapable of resisting the usual and ordinary weight of public travels, but these were so covered that their true condition was not capable of being readily discovered by the public, and could only be seen by making a careful inspection thereof, but these defects could have been readily ascertained by these defendants if they had attempted to inspect the same, or have caused the same to be inspected by any competent person by them employed, which duly rested upon them because of their official duties toward the public, and for the purpose of protecting the public from falling of said bridge."

It was further alleged:

"That said defendants have at all times hereinafter mentioned had ample and sufficient money in their hands and under their control to repair the bridge hereinafter described."

The value of the animals killed was set out, together with a prayer for damages.

To the petition the individual defendants filed a general demurrer, which was by the court sustained. The Fidelity & Deposit Company, surety upon their official bonds, filed no pleading, and neither its rights nor liabilities are considered herein.

Considering this petition with all the reasonable intendments to be drawn therefrom, we are of the opinion that it states a cause of action. The American courts have widely divided upon the question of personal liability of road officers for negligent or willful misfeasance or nonfeasance in the repair of the roads and bridges under their care. Some states have apparently taken different views upon the subject at different periods of their judicial history. The following cases will be found to be illustrative of the various holdings and reasons therefor: Freeholders v. Strader, 18 N. J. Law, 108, 35 Am. Dec. 530; Livermore v. Freeholders, 29 N. J. Law, 245; Bartlett v. Crozier, 17 Johns. (N. Y.) 439, 8 Am. Dec. 428; Mayor v. Furze, 3 Hill (N. Y.) 617; Adsit v. Brady, 4 Hill (N. Y.) 632, 40 Am. Dec. 305; Robinson v. Chamberlain, 34 N. Y. 389, 90 Am. Dec. 713; Smith v. Wright, 24 Barb. (N. Y.) 170; Hover v. Barkhoof, 44 N. Y. 113; Coleman v. Eaker, 111 Ky. 131, 63 S. W. 484; Lynn v. Adams, 2 Ind. 143; McConnell v. Dewey, 5 Neb. 385; Dunlap v. Knapp, 14 Ohio St. 64, 82 Am. Dec. 468; Tearney v. Smith, 86 Ill. 391; Allen v. Michel, 38 Ill. App. 313; Harris v. Carson, 40 Ill. App. 147; Skinner v. Morgan, 21 Ill. App. 209; Gould v. Schermer, 101 Iowa, 582, 70 N. W. 697; Sells v. Dermody, 114 Iowa, 344, 86 N. W. 325; Commissioners v. Duckett, 20 Md. 468, 83 Am. Dec. 557; Commissioners

v. Gibson, 36 Md. 229; Downes v. Hopkinton, 67 N. H. 456, 40 Atl. 433; Doeg v. Cook, 126 Cal. 213, 58 Pac. 707, 77 Am. St. Rep. 171; Warden v. Witt, 4 Idaho, 404, 39 Pac. 1114, 95 Am. St. Rep. 70; Hathaway v. Hinton, 46 N. C. 243; McKenzie v. Chovin, 1 McMul. (S. C.) 222. Upon the common law Brooke's Abr. title Action on Case, reviewing the Year Books, Russell v. Men of Devon, 2 T. R. 608, and Henly v. Mayor of Lyme, 5 Bing. 91, are often cited.

It appears to be not necessary to go into a discussion of these cases in view of the decision of this court in Mott et al. v. Hull, 51 Okla. 602, 152 Pac. 92, L. R. A. 1916B, 1184. In that case certain township trustees were individually sued for damages arising from their negligently leaving an unguarded obstruction in a highway which they were repairing. It was there held that their duties in this regard were purely ministerial, and that for negligence in the performance thereof they might be held individually liable. This court said:

"Where the duties of an officer are purely ministerial, he may be liable in damages to any one who can show he has suffered a special injury because of such officer's failure to perform or negligent performance of such duty."

Indeed, there is little conflict in the adjudicated cases upon the principle. It is in its application that diversity of opinion has arisen. The rule is tersely stated in Amy v. Supervisors, 11 Wall, 136, 20 L. Ed. 101.

"The rule is well settled that, where the law requires absolutely a ministerial act to be done by a public officer, and he neglects or refuses to do such act, ne may be compelled to respond in damages to the extent of the injury arising from his conduct. There is an unbroken current of authorities to this effect. A mistake as to his duty and honest intentions will not excuse the offender."

It must be taken as settled by Mott et al. v. Hull, supra, that the work of repairing roads—and bridges must rest in the same category—by public officers is ministerial in its nature, and likewise that the distinction between acts of misfeasance and nonfeasance in some of the cases does not exist in this state; for each is placed upon the same plane in the language above quoted. But one distinction is noted between the governing principles announced in Mott v. Hull, supra, and those to be applied in the instant case. In the Mott Case the officers sued were township officers, who pleaded that they "were charged by law with power and duty of repairing the highways." Here the parties sued are county commissioners, and the point is made that the statutes of this state impose

no absolute duty upon them to repair the bridges under their charge. We therefore pass to a consideration of the laws governing county commissioners in this regard. It is to be noted that there is no allegation that the bridge in question was upon a "state road," and that therefore the provisions of the act of 1915 peculiar to the duties of the various officers having supervision of such roads are not considered.

By section 7581, Rev. Laws 1910:

"All bridges more than 20 feet long shall be under the control and supervision of the board of county commissioners."

By section 1600, Rev. Laws 1910:

The county commissioners "shall have power * * * to construct and repair bridges and to open, lay out and vacate highways * * * [and] to do and perform such other duties and acts that the board of county commissioners may be required by law to do and perform."

And it is provided in section 7609, contained within the general articles upon roads and bridges, that:

"The board of county commissioners shall provide all roads improved, under the provisions of this article, with suitable bridges of a permanent and substantial character and shall keep and maintain same in repair."

Some question is raised that the latter section applies only to roads within the "improvement districts" provided for in said article. However that may be, we are of the opinion that the general grant of power to repair bridges above set out carries with it the duty so to do within the funds provided by law for such purpose. As early as King v. Inhabitants of Derby, Skin. 370, it was held that "may" in the case of a public officer is tantamount to "shall" and in Rex v. Barlow, 2 Salk. 609, it was said:

"When a statute directs the doing of a thing for the sake of justice or the public good, the word 'may' is the same as the word 'shall.'"

In Supervisors v. U. S., 4 Wall. 435, 18 L. Ed. 419, the statute provided that the supervisors "may, if deemed advisable, levy a tax," etc. Construing the statute, the Supreme Court of the United States said:

"The conclusion to be deduced from the authorities is that, where power is given to public officers, in the language of the act before us, or in equivalent language, whenever the public interest or individual rights call for its exercise, the language used, though permissive in form, is in fact peremptory."

This language was adopted and followed in Jordon v. Davis, 10 Okla. 329, 61 Pac. 1063.

Almost the identical language of our statute was involved in Doeg v. Cook, 126 Cal. 213, 58 Pac. 707, 77 Am. St. Rep. 171, supra. The law there provided that:

"The trustees have power to provide for the opening, lighting, and keeping in good repair streets and alleys."

Under the statute it was held that if the officers, in regard to repairs, negligently performed their duty or did not perform it at all, they were liable in damages to any one specially injured as a result of such neglect.

We can scarcely conceive of a power whose exercise is more strongly called for by the "public interest" than that of keeping bridges in repair. The people use these bridges upon the supposition that they are capable of sustaining ordinary traffic. The county commissioners are public officers, paid for their services, who have the supervision of these bridges and the power to repair them. Under such conditions we hold that power to repair carries with it a duty to exercise that power within the lawful limitations regarding available funds and the like. With the duty to repair necessarily goes the duty to inspect, in person or by agent, in order to ascertain the necessity therefor. Whether or not repairs are necessary; upon what bridges, if more than one is in disrepair, the public funds should be expended; the amount to be devoted to each, the kind of repairs to be made—all these may be matters of discretion, for a mistake in the exercise of which the officers would not be liable; but if this bridge, as alleged, funds being available to do this particular repairing, as alleged in the petition, were left for 17 months so decayed that it constituted, in the language of the petition, "a veritable death trap," and the commissioners knew these facts or could have ascertained them upon "a casual examination," as alleged, and neglected to so inspect the bridge or cause it to be inspected, "wantonly and negligently," then we think that, the necessity for repairs being apparent, and the funds being available therefor, the duty to repair the bridge becomes ministerial, and if they negligently failed to perform that duty they are liable to the plaintiff in the absence of contributory negligence upon his part. The word "negligently" is used herein advisedly, and we are not to be taken as holding that every failure to repair a bridge constitutes a negligent failure of duty or raises a presumption of negligence upon the part of the commissioners.

Defendants rely wholly upon James v. Wellston Township, 18 Okla. 56, 90 Pac. 100, 13 L. R. A. (N. S.) 1219, 11 Ann. Cas. 938,

and Howard v. Rose Township, 37 Okla. 153, 131 Pac. 683, holding the township not liable for damages arising from defects in the township highways. This contention is disposed of by the language of Mott v. Hull, supra:

"An officer may be liable to an individual for negligence in the performance of a purely ministerial duty, although the state or political subdivision thereof which elects him may not, under the law, be liable for his negligence."

We have confined our remarks to a discussion of the duty to repair. So far as the petition alleges defects in the original construction, there being no allegation that these defendants were in office at the time the bridge was first built, we are of opinion that no liability can be fastened upon them in that regard. If any cause of action exists for negligence in the original construction, the right of action is against the persons in office at that time. It does not extend to their successors. Lament v. Haight, 44 How. Prac. (N. Y.) 1.

The judgment of the trial court is reversed, with directions to overrule the demurrer to the petition.

By the Court: It is so ordered.