**STRONG v. DAY et al.**

No. 9467—Opinion Filed Nov. 26, 1918.

(176 Pac. 401.)

**Appeal and Error—Bridges—Personal Injury —Sufficiency of Evidence—Verdict.**

Evidence in this case examined, and held to reasonably support the verdict of the jury, and in such a state of case this court cannot interfere, or disturb the same, upon appeal.

(Syllabus by Hooker, C.)

Error from District Court, Custer County; Thos. A. Edwards, Judge.

Action by S. J. Strong against George W. Day and others. Judgment for defendants, and plaintiff brings error. Affirmed.

Webster & Webster, for plaintiff in error.

Darnell & Darnell, for defendants in error.

Opinion by HOOKER, C. This is an action instituted by the plaintiff in error against the defendants in error, as individuals, for damages alleged to have been caused or suffered by the plaintiff in error on account of the negligent conduct of the defendants in error, as members of the board of county commissioners of Custer county, Okla., in failing and refusing to perform their duty as such county commissioners with reference to the inspection and the repairing of a bridge under their care and supervision in Custer county, Okla. The facts in this case are fully stated in Strong v. Day et al., 61 Okla. 166, 160 Pac. 722, L. R. A. 1917B, 369. There this court said:

"We can scarcely conceive of a power whose exercise is more strongly called for by the 'public interest' than that of keeping bridges in repair. The people use these bridges upon the supposition that they are capable of sustaining ordinary traffic. The county commissioners are public officers, paid for their services, who have the supervision of these bridges and the power to repair them. Under such conditions we hold that power to repair carries with it a duty to exercise that power within the lawful limitations regarding available funds and the like. With the duty to repair necessarily goes the duty to inspect, in person or by agent, in order to ascertain the necessity therefor. Whether or not repairs are necessary; upon what bridges, if more than one is in disrepair, the public funds should be expended; the amount to be devoted to each; the kind of repairs to be made—all these may be matters of discretion, for a mistake in the exercise of which the officers would not be liable; but if this bridge, as alleged, funds being available to do this particular repairing, as alleged in the petition, were left for 17 months so decayed that it constituted, in the language of the petition, 'a veritable death trap,' and the commissioners knew these facts or could have ascertained them upon 'a casual examination,' as alleged and neglected to so inspect the bridge or cause it to be inspected, 'wantonly and negligently,' then we think that, the necessity for repairs being apparent, and the funds being available therefor, the duty to repair the bridge becomes ministerial, and if they negligently failed to perform that duty they are liable to the plaintiff in the absence of contributory negligence upon his part."

The answer filed in this case consisted of

a general denial, and upon the trial hereof the court permitted, of which error is claimed, the defendants below to testify as a matter of defense that they had no knowledge that such a bridge existed. This, it is contended by the plaintiff in error, did not constitute a defense to the cause of action. An examination of the petition alleges that this bridge was constructed in 1910, and the petition alleges that the same became decayed, dangerous, and in a rotten condition, all of which was well known to the defendants below. The lack of knowledge as to the existence of the bridge, or the defective condition thereof, is not an absolute defense to an action of this character; but the same is competent evidence bearing upon the question of negligence in the performance of a public duty. While the defendants in error may not have known of the existence of this bridge, they could still be liable for a failure to inform themselves of the location of said bridge and a failure to perform their duty to inspect the same, to ascertain if its condition be defective.

The trial court told the jury that if the defendants, as members of the board of county commissioners, had knowledge of this defective condition of such bridge, or if upon a casual examination thereof they could have ascertained its defective condition and lack of repair, and that said defendants, notwithstanding such knowledge or lack thereof, if you find that the casual inspection disclosed its defective condition, necessarily failed to supervise, care for, and repair said bridge, etc., that they were liable in this action, and judgment should be rendered for the plaintiff below. This instruction took away from the jury the lack of knowledge as to the existence of this bridge as an absolute defense to this action. While we regard the safe rule, in the interest of the general public, to be that it is the duty of the county commissioners having charge and supervision over bridges to perform their duty, for which they are paid, and inspect the bridge over which the public has to pass, still they are not insurers as to the safety of bridges under their care and supervision.

These instructions properly submitted to the jury the degree of care required of the county commissioners in matters of this character, and the court properly told the jury that before the defendants would be liable for a failure to repair, it must be shown from the evidence that the county had the funds with which said repairs could be made. This evidence shows that this bridge was erected about three years before the injury complained of. It was used by the public without protest, and without any apparent knowledge of its defective condition. The testimony would indicate that its fall was due more, perhaps, to its faulty construction, for which these defendants could not be held liable, than to a decayed condition of some of the timbers composing the same. The evidence does not disclose when the timber in this bridge became decayed, nor does the evidence show that the county had the funds at any time during the official life of the defendants to repair this bridge. It is not sufficient to show that there was so much money in the road and bridge fund of the county at a certain date, but it must be shown that the money was there unappropriated for other purposes. This is not shown by this record. In the absence of that showing the jury could not have returned a verdict, under the intructions of the court and under the law of this case, for the plaintiff below. The jury might have concluded that the injury was due to the faulty construction of the bridge; that is, the design being wrong, and considering this record as a whole, the judgment of the court and the verdict of the jury being reasonably supported by the evidence, we cannot disturb it.

The judgment of the lower court is therefore affirmed.

By the Court: It is so ordered.